**Dorothy Ann KIRKWOOD and Mattie Sue Foote, Plaintiffs,**

v.

**Henry LOEB, Mayor of Memphis, Tennessee; Frank Holloman, Director of Fire and Police of the City of Memphis; Henry Lux, Chief of Police of the City of Memphis; J. L. Shotwell, Jr., R. W. Sojourner, Police Officers of the Memphis Police Department, Defendants.**

Civ. No. 69–197.

United States District Court, W. D. Tennessee, W. D.

Jan. 7, 1971.

Ronald D. Krelstein, Memphis, Tenn., for plaintiffs.

Frierson M. Graves, Jr., Memphis, Tenn., for defendants.

## OPINION

ROBERT M. McRAE, Jr., District Judge.

This is an action for injunctive and declaratory relief arising out of the arrests made under the Memphis Disorderly Conduct Ordinance, Memphis City Code, § 22–12, and the Memphis Loafing Ordinance, Memphis City Code, § 22–24.

Memphis City Code, Section 22–12—Disorderly Conduct—Any person, who, with intent to provoke a breach of the peace, or whereby a breach of the peace may be occasioned, commits any of the following acts shall be deemed to have committed the offense of disorderly conduct:

(1) Uses offensive, disorderly, threatening, abusive or insulting language, or who conducts himself or behaves in an offensive, disorderly, threatening, abusive, or insulting manner.

(2) Acts in such a manner as to annoy, disturb, interfere with, obstruct, or be offensive to others.

(3) Congregates with others on a street, and refuses to move on when ordered by the police.

(4) By his actions causes a crowd to collect, except when lawfully addressing such a crowd.

(5) Shouts or makes a noise either outside or inside a building during the nighttime to the annoyance or disturbance of any considerable number of persons.

(6) Interferes with any person in any place by jostling against such person or unnecessarily crowding him or by placing a hand in the proximity of such person's pocket, pocketbook, or handbag.

(7) Stations himself on the streets or follows pedestrians for the purpose of soliciting alms, or who solicits alms on the streets unlawfully.

(8) Frequents or loiters about any public place soliciting men or women for the purpose of committing a crime against nature or other lewdness.

(9) Causes a disturbance in any railroad car, or other public conveyance, by running through it, climbing through windows or upon the seats, or otherwise annoying passengers or employees therein.

(10) Stands on sidewalks or street corners and makes insulting remarks to or about passing pedestrians or annoys such pedestrians.

(11) Is engaged in some illegal occupation or who bears an evil reputation and with an unlawful purpose consorts with thieves and criminals or frequents unlawful resorts. In any prosecution under this subsection, the fact that the defendant is engaged in an illegal occupation or bears an evil reputation and is found consorting with persons of like evil reputation, thieves or criminals shall be prima facie evidence that such consorting was for an unlawful purpose.

(12) Every person who, after having been directed by an officer or member of the police force to move away therefrom, shall idly remain or loiter in front or in the neighborhood of any church or other place of public worship in the city, during the services therein, or while the members of its congregation are repairing to or returning from such church or other place of public worship.

(13) Every person who, after having been directed by any member or officer of the police force to move away therefrom, shall idly remain or loiter in front of or in the neighborhood of any theater, concert hall, ballroom, or other public place of amusement in the city during the time that such place shall be or remain open to the public, or while the public is repairing thereto or returning therefrom.

(14) Every person who shall, without legitimate business or purpose idly remain or loiter on the sidewalks or public streets of the city after having been notified to move away therefrom by any officer or member of the police force.

(15) Every common prostitute wandering the public streets, or in any place of public resort.

The enumeration of the aforesaid acts shall not be construed as excluding any other acts, and any act wherein the peace and quietude of the community is invalid shall be considered disorderly conduct.

Memphis City Code—Section 22-24— Loafing, loitering, etc.—It shall be unlawful for any person to loaf, loiter, wander, or idle in, upon, or about any of the following places, without any legitimate business or purpose:

(1) Any street, alley, highway, square, park or thoroughfare.

(2) Any public building, railroad, or bus station, or airport, poolroom, bowling alley, theater, or taxicab stand.

(3) Restaurant, cafe, lunchstand, liquor stores, tavern, inn, hotel or tourist cabin.

(4) Disorderly houses, gambling houses, assignation houses or places where intoxicating ı liquors are known or commonly reputed to be sold.

Or to so conduct oneself, individually, or in concert with others in the use of, or upon or in any of the aforementioned places, so as to interfere with the free and uninterrupted use of such places by others lawfully there.

The plaintiff, Dorothy Ann Kirkwood, is a Negro citizen, who was arrested and charged with loitering in Memphis, Shelby County, Tennessee. The plaintiff, Mattie Sue Foote, is also a Negro citizen. She was arrested and charged with disorderly conduct in Memphis, Tennessee. These charges have not been tried pending the determination of this case.

The defendant Henry Loeb is the duly elected Mayor of Memphis, Tennessee. The remaining defendants are police department officials and officers of the City of Memphis.

By stipulation of the parties, it was agreed that the Court would rule on the constitutionality on its face of the ordinances and that no question would be raised as to any unconstitutional application of the ordinances. At the hearing of this matter, no evidence was presented to the Court and no issue pertaining to injunctive relief is presently before the Court.

The plaintiffs contend, inter alia, that the ordinances are patently unconstitutional in that they are vague, ambiguous and fail to establish ascertainable standards; they are overbroad and encompass within their scope protected activities.

It is clear that legislation which is "so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application" does not satisfy the minimum requirements of the Due Process clause of the Fourteenth Amendment. Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). Legislation embodying such terms as "without any legitimate business or purpose," without "apparent means of support" and without "an honest calling" fall short of adequately establishing cri-

teria which can be interpreted consistently and uniformly. Such standards, if in fact they are standards at all, cannot "provide for government by clearly defined laws, but rather for government by moment-to-moment opinions of a policeman". Shuttlesworth v. City of Birmingham, 382 U.S. 87, 90, 86 S.Ct. 211, 213, 15 L.Ed.2d 176 (1965); Cox v. Louisiana, 379 U.S. 559, 579, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965); Kirkwood v. Ellington, 298 F.Supp. 461 (W.D. Tenn. 1969).

Aside from the constitutional infirmity of "vagueness", ordinances must not be "overbroad". As stated by the Supreme Court in NAACP v. Alabama, 377 U.S. 288, 307, 84 S.Ct. 1302, 1314, 12 L.Ed.2d 325 (1964), "a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." See, to the same effect, Zwickler v. Koota, 389 U.S. 241, 250, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967).

■ The Court is not unmindful of the City's interests in keeping its streets and sidewalks open for proper use and for maintaining a peaceful, crime-free society wherein all persons may enjoy freedom from fear of assault and harm. However, these interests must also accommodate and be balanced against the constitutional liberty of all individuals to be peaceably upon the public thoroughfares. While the city has a legitimate interest in regulating traffic, both pedestrian and vehicular, and in maintaining law and order, it must do so in a manner not encroaching upon individual freedoms.

■ This issue has most often arisen in cases which involved the rights of individuals to access to the streets for the purpose of exercising First Amendment freedoms of speech and peaceful assembly. There is also the right to be upon the public streets which is broader than the right to be upon the streets to dis-

seminate information and peaceably assemble to redress grievances. These rights are not themselves absolute nor beyond reasonable restraint, Cox v. Louisiana, *supra*, but the right to use the public thoroughfares cannot be at the whim or caprice of a policeman. Shuttlesworth v. Birmingham, *supra*, 382 U.S. at 90, 86 S.Ct. 211; Kirkwood v. Ellington, *supra*.

The issue with which the Court is faced is whether the means chosen by the City to effectuate its legitimate ends are so sweeping or vague that fundamental personal liberties are too severely stifled or infringed.

Counsel for the defendants urges that the various subsections of the disorderly conduct ordinance are salvaged from possible constitutional infirmity by the prefatory language, "with intent to provoke a breach of the peace, or whereby a breach of the peace may be occasioned." The Supreme Court of the United States has held almost identical language "unconstitutionally vague in its overly broad scope." Cox v. Louisiana, *supra*, 379 U.S. at 551, 85 S.Ct. at 462. This Court sitting as a member of a Three-Judge Court, declared the Tennessee Disorderly Conduct statute, T.C.A. § 39–1213, unconstitutional. In doing so it was noted that the definition of "breach of peace", as defined by the Tennessee Supreme Court in State ex rel. Thompson v. Reichman, 135 Tenn. 653, 188 S.W. 225, was too vague by Fourteenth Amendment standards. Original Fayette County Civic and Welfare League v. Ellington, 309 F.Supp. 89 (W.D.Tenn.1970). Therefore, the prefatory language of the disorderly conduct ordinance weakens instead of strengthens the fifteen numbered subsections. This is particularly true in view of the concluding unnumbered catch-all one sentence summary of the entire ordinance which provides: "The enumeration of the aforesaid acts shall not be construed as excluding any other acts, and any act wherein the peace and quietude of the community is invalid shall be considered disorderly conduct."

The state Disorderly Conduct statute also prohibited and declared criminal "offensive, disorderly, threatening, abusive or insulting language * * * or * * * manner;" "[a]cts which annoy, disturb, interfere, obstruct" or are "offensive"; and "congregat[ing] with others and refus[ing] to move when ordered by the police". We held it was susceptible to no construction which would relieve it of the constitutional infirmities of vagueness and overbreadth. Original Fayette County Civic and Welfare League v. Ellington, *supra*.

■ These terms and such provisions of the Memphis disorderly conduct ordinance, declaring criminal such conduct as "stand[ing] on sidewalks or street corners and mak[ing] insulting remarks to or about passing pedestrians" and "[i]nterfer[ing] with any person in any place by jostling against such person or unnecessarily crowding him or by placing a hand in the proximity of such person's pocket, pocketbook, or handbag", do not provide the fair warning to the public and the certainty of interpretation to Courts and juries that is required by the Due Process clause of the Fourteenth Amendment. These provisions are too sweeping, indefinite and uncertain to stand the challenge of constitutional defect. Hunter v. Allen, 286 F.Supp. 830, 836 (N.D.Ga.1968); Baker v. Bindner, 274 F.Supp. 658 (W.D.Ky. 1967).

■ In addition to the above infirmities, various subsections of the disorderly conduct ordinance suffer from other fatal defects. For example, one subsection purports to make criminal the conduct of persons who are "engaged in some illegal occupation or who bear an evil reputation and with an unlawful purpose consort with thieves and criminals or frequent unlawful resorts * * *"; another subsection declares criminal "every common prostitute wandering the public streets, or in any place of public resort". Such ordinances making "status" alone a crime are unconstitutional. Landry v. Daley, 280 F.Supp.

968, 971 (N.D.Ill.1968); Wheeler v. Goodman, 306 F.Supp. 58 (W.D.N.C. 1969 Three Judge Court); Decker v. Fillis, 306 F.Supp. 613 (D.C.Utah 1969).

■ Subsections 3, 12, 13 and 14 of the disorderly conduct ordinance are conditioned upon the failure to "move" when directed to do so by a policeman and include standards which are vague and overbroad. Therefore, by their very terms these subsections make an individual's continued presence on a public street conditioned upon the permission of a policeman.

■ Specifically examining the Loafing Ordinance, Memphis City Code § 22–24, it is apparent that the ordinance consists of two separate and disjunctive offenses. The first makes it "unlawful for any person to loaf, loiter, wander, or idle in, upon, or about any of the following places, without any legitimate business or purpose * * *." Without reiterating the above discussion, it is clear that the first part of the ordinance is both too vague and overbroad on its face to satisfy the constitutional requirements of Due Process.

■ The second part makes it unlawful to "conduct oneself, individually or in concert with others in the use of, or upon or in any of the aforementioned places, so as to interfere with the free and uninterupted use of such places by others lawfully there." There is no question but that the City has the duty to maintain the public streets and sidewalks so as to allow uninterrupted ingress and egress to public as well as private buildings. Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968); Cox v. Louisiana, *supra*; Hunter v. Allen, *supra*. However, subsection (4) is too vague. It is uncertain just what places are included within its prohibition. And even though the places enumerated in subsections (1) through (3) are narrow, specific and expressive of a legitimate city interest, the Court is constrained to find the offenses described by the part of the ordinance

unconstitutional as it fails to include within its requisites a willful intent.

In addition, the ordinance does not include a provision requiring a refusal ·to disperse when requested to do so by appropriate authority. Mere refusal to move on after a police officer's request to do so is not enough to support a criminal offense. There must be a refusal to move on coupled with a showing of the accused's continued obstruction of egress and ingress. Both elements are essentials and they must co-exist simultaneously. Bachellar v. Maryland, 397 U.S. 564, 90 S.Ct. 1312, 25 L.Ed.2d 570 (1970); Shuttlesworth v. Birmingham, *supra*, 382 U.S. at 90–91, 86 S.Ct. 211.

Both ordinances which are challenged herein deal with matters which are clearly within the police power of the City of Memphis. However, for the reasons previously stated the ordinances contain provisions which are vague or overbroad, or both, by Fourteenth Amendment minimum standards. In addition to ambiguities, the ordinances are redundant by their own terms. The various provisions are so intertwined that the entire ordinances must be declared unconstitutional and void.

This Court is of the opinion that the observation of Judge Will in Landry v. Daley, 280 F.Supp. 968 (N.D.Ill.) wherein the disorderly conduct ordinance of the City of Chicago was declared unconstitutional, is equally appropriate with regard to the two City of Memphis ordinances involved in the instant case. On page 972 of volume 280 Federal Supplement, the opinion states in part:

> "The time has come for the City of Chicago to adopt a modern ordinance which will enable it to discharge its responsibility for maintaining the peace while at the same time protecting its citizens in the enjoyment of their constitutional rights."

Counsel for the plaintiffs will prepare and submit to the Court a judgment on this decision by the Court.