Linda **FARBER**, on behalf of herself and all others similarly situated, Plaintiff,

v.

**James M. ROCHFORD, Superintendent of the Police of the City of Chicago, et al., Defendants.**

No. 75 C 1642.

United States District Court, N. D. Illinois, E. D.

Nov. 25, 1975.

Jeff Coleman and Sybille C. Fritzsche, Jenner & Block, Linda R. Hirshman, Chicago, Ill., for plaintiff.

Michael Small, Asst. Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

DECKER, District Judge.

Plaintiff Linda Farber, also known as Lisa Terrell, was arrested on the evening of March 10, 1975, while having a drink in the Ambassador West Hotel.[1] The arrest was made pursuant to § 192–6 of the Municipal Code of the City of Chicago, which provides that:

> "It shall be unlawful for any habitual drunkard, any person known to be a narcotic addict, any person known to be a prostitute, or any person who aids or abets prostitution, or for any person previously convicted of a felony, of prostitution, or of aiding and abetting prostitution, to assemble or congregate with other persons of any of the foregoing classes in or upon the public ways or other public places in the city or to loaf or loiter in or about or frequent the premises of any place where intoxicating liquors are sold."

Plaintiff, who had never been previously arrested either under this ordi-

---

1. Farber contends that the arrest was made without any intention of actual prosecution, noting that her case was nonsuited on March 18, 1975.

nance or under any other law relating to prostitution, has brought this action, seeking a declaration that the above ordinance is unconstitutional on its face and as applied, and asking for an award of monetary damages for alleged violations of her civil rights pursuant to the above arrest. Additionally, she seeks to represent the class of all persons either previously arrested or exposed to harassment and threatened arrest under the challenged ordinance, and requests the expungement of all records pertaining to arrests under § 192–6 of members of said class.

The defendants in this suit are various public officials, including the superintendent of police, the mayor of the City of Chicago, and certain police officers and police matrons who dealt with plaintiff during her arrest and incarceration. Defendants have moved to dismiss Count I (dealing with the constitutionality of § 192–6) and Count IV (dealing with the alleged discriminatory application of the ordinance), and have additionally moved this court to deny class certification, and for summary judgment in behalf of certain named defendants.

## I. Motion to Dismiss Count I

The keystone motion in this set is the motion to dismiss Count I. After consideration of the ordinance and the lengthy briefs submitted by the parties, the court has determined that this motion should be denied for the reason that § 192–6 is unconstitutional on its face as alleged by plaintiff.

It is a central tenet of our system of justice, undisputed by defendants in their briefs, that legislation which proscribes conduct in vague and indefinite terms cannot satisfy the requirements of the Bill of Rights. Both sides cite the Supreme Court's holding in *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972), that

". . . because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intel-

ligence a reasonable opportunity to know what is prohibited, so that he may act accordingly."

The challenged law must be analyzed to determine whether it "delineates its reach in words of common understanding." *Cameron v. Johnson*, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968). An ordinary citizen should be able to act with certainty as to the legal effect of his conduct. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); *U. S. v. Harriss*, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954); *Lanzetta v. New Jersey*, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939). And if this is not the case, "a criminal statute perishes on constitutional grounds when it leaves speculative the tests for ascertaining the line separating guilty from innocent acts." *Ricks v. District of Columbia*, 134 U.S.App.D.C. 201, 414 F.2d 1097, 1101 (1968).

When these constitutional principles are applied to the instant municipal ordinance, the irremediable deficiencies of that statute become manifest.

Several categories of individuals are covered by § 192–6. Two of these categories are to be established by a totally obscure process of determining so-called "knowledge": persons "known to be a prostitute", and persons "known to be a narcotic addict". The words "known to be" are omitted with reference to habitual drunkards, and aiders and abettors of prostitution, but this differential treatment is only viewed as a stylistic nicety.

The defendants seriously contend that there can be no impermissible vagueness in these terms since an individual would "know" whether he or she was a prostitute (or an addict). But, of course, the statute does not solely address people who believe themselves to fall into these categories. It speaks of people "known to be", and the absurdity of this phrase has already been judicially noticed. As the Supreme Court has stated in *Lanzetta, supra*:

"The enactment employs the expression, 'known to be a member.' It is

ambiguous. There immediately arises the doubt whether actual or putative association is meant. If actual membership is required, the status must be established as a fact, and the word 'known' would be without significance. If reputed membership is enough, there is uncertainty whether that reputation must be general or extend only to some persons." 306 U.S. at 458, 59 S.Ct. at 621.

Since the ordinance expressly refers to certain individuals who fall into the covered status by prior conviction, there can be no doubt that "known to be" refers to general reputation. A court can only indulge in conjecture as to how reputation might be ascertained.

"Known by whom—the arresting officer, his superior or another officer who tells him, or neighbors or other civilians who tell the police. What independent investigation, if any, must the arresting officer make before relying on hearsay?" *Landry v. Daley*, 280 F.Supp. 968, 971 (N.D.Ill.1968).[2]

*Accord, Lanzetta, supra.*

Reputation and general knowledge have no certain relationship whatsoever to actual condition. A person may innocently obtain an unfortunate reputation without ever having committed any wrongful acts. Our system does not allocate or limit constitutional rights according to gossip. The law enforcement authorities are entitled to punish acts, but not reputation. This law "is unconstitutional, as it seeks to punish an individual for what he is reputed to be, regardless of what he actually is." *People v. Belcastro*, 356 Ill. 144, 146, 190 N.E. 301, 303 (1934).

Furthermore, it is evident that an individual might not be aware of his or her "reputation". An "exclusive" call girl may take extreme precautions to keep her occupation secret, and will indeed be justified in assuming that, regardless of the fact, she is not "known" as such.

And by contrast, a woman who for some reason has aroused the many tongues of "Rumor" may be totally unaware of the fact. And perhaps a promiscuous individual (though not legally a prostitute) might be uncertain as to how neighbors and fellow workers interpreted his or her conduct.[3] In short, no citizen of Chicago can venture upon the "public ways and other public places in the city, etc." with absolute certainty that his reputation shields him from liability in the eyes of the relevant authorities.

■ The Constitution is offended when law enforcement officers are given unbridled discretion to pick and choose among possible arrestees. *Grayned, supra*, lists as one of the prongs of the test

---

2. Defendants attempt to dismiss the emphatic words of Judge Will as not determinative of the constitutionality of the phrase "known to be". They claim that the language must be read as a whole to see whether it fails to clearly define the proscribed conduct. This statement is both inaccurate and irrelevant. For even were the forbidden *conduct* stated with mathematical precision such a statute would be impermissibly vague inasmuch as no individual could be certain whether he was one forbidden such conduct. Under this ordinance only certain categories of individuals are barred from frequenting establishments vending liquor. The proscribed category remains vague, and any statute with such wording cannot meet the constitutional test.

The ordinance in question in *Landry* was characterized as a "charming grab bag"; the instant ordinance lacks even this merit.

3. "And for every eye she ["Rumor"] has also a tongue, a voice and a pricked ear.
    At night she flits midway between earth and sky, through the gloom
    Screeching, and never closes her eyelids in sweet slumber;
    By day she is perched like a look-out either upon a roof-top
    Or some high turret; so she terrorizes whole cities
    Loud-speaker of truth, hoarder of mischievious falsehood, equally.
    This creature was now regaling the people with various scandal
    In great glee, announcing fact and fiction indiscriminately."
    Aeneid IV 183–190, C. Day Lewis Translation.

determining the constitutionality of a statute the existence of explicit standards, noting that a "vague law impermissibly delegates basic policy matters to policemen." 408 U.S. at 108–09. Vagueness of statutory language gives police officers uncontrolled power to arbitrarily select individuals for arrest and jeopardizes the rights of members of unpopular or controversial groups. *Papachristou v. City of Jacksonville, supra; U. S. ex rel. Newsome v. Malcolm*, 492 F.2d 1166 (2d Cir. 1974); *Goldman v. Knecht*, 295 F.Supp. 897 (D.Colo.1969).

■ Before leaving the subject of vagueness, a few words are in order with respect to the rest of the statute. While the "known to be" passages, both express and implied, are the most egregious violations of this constitutional principle, the rest of the statute suffers from similar serious defects.

The statute forbids members of the covered categories to "loaf or loiter in or about or frequent the premises of any place where intoxicating liquors are sold." This wording resembles language found impermissibly vague in many other cases. See in particular the bucolic argument in behalf of loafing in *Papachristou v. City of Jacksonville, supra; Ricks v. District of Columbia, supra; Kirkwood v. Loeb*, 323 F.Supp. 611 (W.D. Tenn.1971); and cases cited in footnote 47 to *Ricks.* As the court in *Goldman v. Knecht, supra*, stated:

> "Words such as loitering or strolling, frequenting public places, or where liquor is sold, etc., do not lend themselves to a limiting construction. The uncertainty and ambiguity persist regardless of the construction." 295 F.Supp. at 901.

The defendants have attempted to construct an argument justifying the ordinance on the basis that it does not undermine the requirements of probable cause for an arrest. But an ordinance of this nature inevitably precludes application of probable cause.

> "[B]ecause the crime prevention components of loitering statutes are aimed at suspected or potential rather than incipient or observable conduct, they may conflict with the deeply rooted Fourth Amendment requirement that arrests must be predicated on probable cause, . . ." *U. S. ex rel. Newsome v. Malcolm, supra*, at 1172.

The *Newsome* court doubted that even officers acting in complete good faith could justify against the Fourth Amendment any arrest under such an ordinance.

■ Section § 192–6 and other ordinances of its ilk also suffer from the basic infirmity that they look towards the status of the suspect rather than his conduct as the determinative factor of guilt. It is now clearly the law that one cannot constitutionally be punished because of one's status. *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). And for an even longer period it has been held that a person cannot be punished for being "a suspicious person". *Stoutenburgh v. Frazier*, 16 App.D.C. 229 (1900). Criminal penalties require an *actus reus*.

Defendants have made an exceptionally unpersuasive argument that § 192–6 is directed towards the control of illicit conduct rather than the punishment of status:

> "The ordinance under examination herein does not make it an offense to be a habitual drunkard, a narcotic addict or a prostitute; rather it forbids *acts* of congregating in public places and loitering by these persons. The purpose of the ordinance is not to punish status, but to deter conduct which is a necessary adjunct to the practice of behavior which violates the standards of the community."

The short answer to this argument is found in *Papachristou, supra*, "The . . . ordinance makes criminal activities which by modern standards are normally innocent." 405 U.S. at 163, 92 S.Ct. at 844. There is no *actus reus* at all required by the ordinance, only conduct which, while occasionally an "adjunct" to illicit behavior, is of itself perfectly defensible.

Under this ordinance no ex-convict, nor indeed any individual not totally certain of his or her "reputation", may venture with confidence into a baseball park, supermarket, drugstore, restaurant, airplane, perhaps even a policemen's ball, or any other premises where intoxicating liquors might be sold. Similarly, all individuals susceptible to being covered by this ordinance must be wary when they take the bus, or walk the street, or even assemble in a crowd. For someone else "known to be" in a proscribed category may be lurking in the area, thus establishing the possibility that they might be seen to "assemble or congregate with other persons of any of the foregoing classes in or upon the public ways or other public places in the city."

*Powell v. Texas*, 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968), does not in any way save this ordinance from creating an offense based on status. In *Powell* the challenged statute punished an illicit act, public drunken behavior, rather than the status of being a chronic alcoholic. Under *Powell* such an alcoholic might be arrested for public drunkenness, but it is certain that he could not be charged for venturing upon the public ways when not in a state of inebriation. Reputation and status are irrelevant in *Powell*: an offensively intoxicated individual, although a "known" teetotaler would be equally susceptible to prosecution under the statute in question.

A statute that penalizes actual solicitation for prostitution, actual public drunkenness, would not be unconstitutional on these grounds. But this type of ordinance seeks a shortcut, and shortcuts cannot trespass across constitutional rights.

"The implicit presumption in these generalized vagrancy standards—that crime is being nipped in the bud—is too extravagant to deserve extended treatment. Of course, vagrancy statutes are useful to the police. Of

course, they are nets making easy the roundup of so-called undesirables. But the rule of law implies equality and justice in its application." *Papachristou, supra*, 405 U.S. at 171, 92 S.Ct. at 848.

As a result it is clear that crime cannot be short-circuited by the arrest of those with a "propensity" to crime.

"[T]he fundamental requirement that some action be proved is solidly established even for offenses most heavily based on propensity." *Powell v. Texas, supra*, 392 U.S. at 543, 88 S.Ct. at 2159.

"Statistical likelihood that a particular societal segment will engage in criminality is not permissible as an all-out substitute for proof of individual guilt. And not even past violation of the criminal law authorizes one's subjection to innately vague statutory specifications of crime." *Ricks v. District of Columbia, supra*, at 1110.

■ Since this ordinance effectively transforms into criminal behavior ordinary conduct of individuals on the basis of both adjudicated and suspected status,[4] it is patently unconstitutional. *Accord, Kirkwood v. Loeb*, 323 F.Supp. 611 (W.D.Tenn.1971); *Decker v. Fillis*, 306 F.Supp. 613 (D.Utah 1969).

In addition to the above grounds for holding § 192–6 unconstitutional, this ordinance must also fail because it punishes the exercise of the right to assemble, which is constitutionally protected conduct. Under this ordinance certain individuals may not freely assemble or congregate, regardless of whether they had manifested any criminal intent in so doing. "The ordinance before us makes a crime out of what under the Constitution cannot be a crime." *Coates v. City of Cincinnati*, 402 U.S. 611, 616, 91 S.Ct. 1686, 1689, 29 L.Ed.2d 214 (1971). *Accord, Papachristou, supra*; *Shuttlesworth v. Birmingham*, 382 U.S. 87, 86 S.Ct. 211, 15 L.Ed.2d 176 (1965); *Cox v.*

---

**4.** This court emphasizes that this type of legislation, no matter how precisely worded, cannot transmute licit behavior into criminal conduct by virtue of an arrest record.

*Louisiana,* 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965).

For all of the above grounds this court finds that § 192–6 of the Municipal Code of the City of Chicago is unconstitutional on its face, and therefore holds that defendants' motion to strike Count I of the complaint must be denied.

## II. Motion to Deny Certification as a Class Action

The finding of this court that § 192–6 is unconstitutional on its face greatly simplifies the question of class certification and disposes of all meaningful objections that defendants might have been able to raise.

■ Since there can be no future enforcement of an unconstitutional ordinance, the only remaining issue affecting the individuals plaintiff seeks to represent is the expungement of any criminal records owing to the illegal statute. This is clearly a remedy available to a plaintiff who has been charged pursuant to invalid authority. *Peters v. Hobby,* 349 U.S. 331, 348–49, 75 S.Ct. 790, 99 L.Ed. 1129 (1955).

This court finds that an appropriate class may be certified as "those persons who have been arrested pursuant to § 192–6 of the Municipal Code of the City of Chicago". This is a clearly defined and bounded class which is readily determinable from official records.

The instant case presents a classic example of a F.R.Civ.P. 23(b)(2) class action where

"the party opposing the class has acted or refused to act on grounds generally applicable to the class, making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

■ There can be no doubt that this suit satisfies the prerequisites of a class action established in Rule 23(a).

(1) The class is indeed so numerous that the joinder of all members is impractical. Indeed defendants concede this point and argue that the class is *too* large.[5]

(2) There are questions of law common to the class. All members thereof have been arrested pursuant to an unconstitutional ordinance.

(3) The claims of plaintiff Farber, who has also been arrested pursuant to § 192–6, are typical of the claims of this class.

(4) Since this court has determined that this ordinance should be declared unconstitutional, there can be no doubt that plaintiff can adequately protect and represent the interests of the class.

Therefore, this court grants certification to the class as defined above with possible relief to be limited to the expungement of any official record pertaining to arrests under the ordinance in question, under conditions ·and procedures to be determined by the court after a hearing.

## III. The Motion to Dismiss Certain Defendants

Defendants have moved for summary judgment in behalf of Police Chief Rochford, Mayor Richard J. Daley, Vice Squad Chief O'Donnell, and Acting Corporation Counsel Quinlan, asserting that these individuals are improper defendants in an action pursuant to 42 U.S.C. § 1983.

■ This is clearly not the case. Injunctive relief against higher public officials is available in situations where they have been found to supervise and authorize unconstitutional activities. *Slate v. McFetridge,* 484 F.2d 1169 (7th

---

**5.** Doubtlessly were the class small and manageable the defendants would be heard to argue that, too, as grounds for denial of a class action. But numerosity, regardless of convenience of judicial management, is a basis for the granting of a class action. Furthermore, the court doubts the estimates offered by the defendants of the potential size of the class. There is substantial evidence that § 192–6 has been used primarily as a dragnet device to clear the streets and public places of "undesirables". Doubtlessly a good proportion of the estimated 165,000 arrests were of repeaters.

Cir. 1973); *Build of Buffalo, Inc. v. Sedita*, 441 F.2d 284 (2d Cir. 1971); *Lankford v. Gelston*, 364 F.2d 197 (4th Cir. 1966). Indeed, where, as here, a municipal ordinance is found unconstitutional, the fashioning of appropriate equitable relief necessitates that the officials in charge of enforcing the laws be enjoined.

For the purposes of injunctive relief barring the enforcement of § 192–6, these officials' lack of knowledge of the details of the March 10, 1975, arrest is irrelevant. As for the prayer for monetary damages, that issue is not presently before the court, and will be determined by the appropriate standards.

### IV. The Motion to Dismiss Count IV

Since this court finds the ordinance in question unconstitutional on its face, the allegations of Count IV that it has been enforced in an impermissible, discriminatory manner are superfluous, and need not be determined by the court.[6]

For the above reasons, defendants' motion to dismiss Count I is denied, as is defendants' motion for summary judgment in behalf of Rochford, Daley, Quinlan and O'Donnell. The motion to deny certification of a class action is denied, and this court certifies the class in the instant case as "those persons who have been arrested pursuant to § 192–6 of the Municipal Code of the City of Chicago".

---

**6.** It is apparent, however, that defendants' briefs misconstrued the nature of this count. Plaintiff alleges that the police have enforced a statute equally applicable to males and females in a discriminatory manner by only concentrating on female prostitutes. The briefs of the defendants in effect concede this point. Discriminatory selection of arrestees cannot be remedied by nondiscrimination in the selection of arresting officers.