THE CITY OF CHICAGO, Plaintiff-Appellant, v. JAMES YOUKHANA *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—93—3909

Opinion filed December 18, 1995.

Susan S. Sher, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Stuart D. Fullerton, Assistant Corporation Counsel, of counsel), for appellant.

Harvey Grossman, of The Roger Baldwin Foundation of ACLU, Inc., and Rita A. Fry, Public Defender, both of Chicago (Eileen T. Pahl, Assistant Public Defender, of counsel), for appellees.

Lord, Bissell & Brook, of Chicago (Andrew Kochanowski, Fred L. Alvarez, and Robert A. Badgley, of counsel), and Washington Legal Foundation, of Washington, D.C. (Daniel J. Popeo and Richard A. Samp, of counsel), for amici curiae Washington Legal Foundation, Henry Hyde, Philip Crane, Northwest Neighborhood Federation, Concerned Citizen Neighborhood Federation, Concerned Citizen Neighborhood Watch Organization-81st & 82nd, West Avalon Civic Group, and Marynook Homeowners Association.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Peter Fischer, Assistant State's Attorneys, of counsel), for amicus curiae County of Cook.

JUSTICE BUCKLEY delivered the opinion of the court:

The City of Chicago (the City) prosecuted defendants for violating section 8—4—015 of the Municipal Code of Chicago, more commonly known as the "gang-loitering ordinance." (Chicago Municipal Code § 8—4—015 (1992).) Defendants moved to dismiss the City's action against them, and on September 29, 1993, the circuit court granted the defendants' motion, finding that the ordinance violated the United States and Illinois Constitutions. The City appeals the circuit court order, and we must affirm.

We base our decision on several grounds, the strongest of which is that this ordinance violates the freedoms of association, assembly and expression secured by the first amendment and article I, section 5, of the Illinois Constitution. The ordinance also suffers from the infirmity of being unconstitutionally vague, thus violating due process rights. Furthermore, we find that the ordinance unconstitutionally criminalizes status and allows arrests without probable cause in violation of the fourth amendment.

BACKGROUND

Like many other American cities, Chicago is home to criminal street gangs. In 1992, the City held hearings on the subject of gang-

related crime. Based on these hearings, the City determined that criminal street-gang activity in Chicago was largely responsible for the increasing murder rate in the City. The City also concluded that the presence of gang members in public places is intimidating to law-abiding citizens. The City recognized that gangs operate by establishing control over identifiable areas, by loitering and intimidating others from entering those areas. However, by ceasing to commit crimes, such as drug dealing and vandalism, when police officers are present, the gang members avoid arrest while maintaining control over their territory. This obvious connection between gang crime and loitering led the City to enact the ordinance at issue here. The gang-loitering ordinance provides in pertinent part:

"(a) Whenever a police officer observes a person whom he reasonably believes to be a criminal street gang member loitering in any public place with one or more other persons, he shall order all such persons to disperse and remove themselves from the area. Any person who does not promptly obey such an order is in violation of this section.

(b) It shall be an affirmative defense to an alleged violation of this section that no person who was observed loitering was in fact a member of a criminal street gang.

(c) As used in this section:

(1) 'Loiter' means to remain in any one place with no apparent purpose.

(2) 'Criminal street gang' means any ongoing organization, association in fact or group of three or more persons, whether formal or informal, having as one of its substantial activities the commission of one or more of the criminal acts enumerated in paragraph (3), and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity.

\* \* \*

(5) 'Public place' means the public way and any other location open to the public, whether publicly or privately owned." Chicago Municipal Code § 8—4—015 (1992).

After the ordinance was adopted, the Chicago police department promulgated a general order to define the circumstances under which members of the department are permitted to enforce the ordinance. Authorized officers are directed to order persons loitering in a designated area "to disperse and remove themselves from the area" when there is probable cause to believe that at least one of those persons is a criminal street-gang member. The officers are then directed to arrest and charge "any person who does not promptly

obey such an order." The order requires the arresting officer to complete the arrest report for each arrest, which provides specific reasons for a conclusion of probable cause that the arrestee was either a criminal street gang member or a person loitering in a group with a gang member. General Order No. 92—4, at 3 (1992).

Probable cause to establish membership is substantiated by the officers' experience and knowledge of the alleged offenders and reliable information such as admission of membership, uses of gang symbols, or identification of reliable informants. (General Order No. 92—4, at 2 (1992).) The district commanders must maintain and update gang information files and ensure that they contain only names of individuals the department has concluded it has probable cause to believe are members of criminal street gangs operating within the district. The order also provides that the criminal street gangs in each area must be identified "on the basis of specific, documented and reliable information," such as officer observations, analysis of crime pattern information, and interviews with witnesses, admitted gang members and reliable informants.

According to the general order, the ordinance may be enforced only in portions of the City where loitering by street gangs has posed a demonstrable problem for the surrounding community. In deciding which areas to designate, district commanders must consult with knowledgeable members of the department and appropriate community groups. They must also use crime pattern information, citizen complaints, police observations, and the views of local public officials and other reliable members of the community.

On June 15, 1993, defendants, James Youkhana, Fernando O. Cota, Jose A. Merced, Roosevelt McMullan, Jr., Johnny R. Newsome, Anthony D. Cordero, Julio M. Barroso, Hermie J. Khamo, Lamont J. Jordan, Lisa Gonzales, and Florentine Soto, were arrested at 1433 West Carmen in Chicago and charged with violating the ordinance. According to the complaints filed against them, the defendants were "observed loitering at 1433 W. Carmen, a public place with one or more persons at least one of whom was member of the Latin Kings criminal street gang, and *** failed to disperse and remove [themselves] from the area when ordered to do so by the [Police] [Officer] R. Day #4476." Defendants Sabrina Brown, Tasha White, and Renee Goodwill were arrested on June 22, 1993, and charged with violating the ordinance by loitering in the vicinity of 1528 West Morse in Chicago. The arrest reports indicate that they are members of the Gangster Disciple street gang. After being warned to leave the area

"at 2145 hrs," they were found to be loitering in the same area and refused to leave the area at 2200 hours.[1] Defendants moved to dismiss the complaints against them on the ground that the ordinance is unconstitutional on its face, and as applied, in that it violates their rights under the fourteenth, first, and fourth amendments of the United States Constitution and the corresponding sections of the Illinois Constitution. The municipal court granted the motion and this appeal followed.

## DISCUSSION

### I

■ The overbreadth doctrine "allows a defendant to challenge the validity of a statute on its face when the mere existence of the statute may inhibit the exercise of expressive or associational rights protected by the first amendment, even though those rights do not protect the activities of the defendant." (*People v. Garrison* (1980), 82 Ill. 2d 444, 449, 412 N.E.2d 483, 486, citing *Bates v. State Bar* (1977), 433 U.S. 350, 380, 53 L. Ed. 2d 810, 833, 97 S. Ct. 2691, 2707; *Broadrick v. Oklahoma* (1973), 413 U.S. 601, 611-17, 37 L. Ed. 2d 830, 839-43, 93 S. Ct. 2908, 2915-18.) A law is overbroad if it authorizes punishment of constitutionally protected conduct. *City of Houston v. Hill* (1987), 482 U.S. 451, 458, 96 L. Ed. 2d 398, 410, 107 S. Ct. 2502, 2508.

The City argues that this ordinance is not overbroad because any expressive activity protected under the first amendment such as picketing and protesting is not implicated by the ordinance, as these activities have an apparent purpose. However, we agree with defendants' contention that the ordinance clearly implicates the first amendment rights of assembly, association, and expression.

In *Coates v. City of Cincinnati* (1971), 402 U.S. 611, 29 L. Ed. 2d 214, 91 S. Ct. 1686, the United States Supreme Court found Cincinnati's loitering ordinance to be unconstitutionally broad. The ordinance made it a criminal offense for "three or more persons to assemble *** on any of the sidewalks *** and there conduct themselves in a manner annoying to persons passing by." (*Coates*, 402 U.S. at 611 n.1, 29 L. Ed. 2d at 216 n.1, 91 S. Ct. at 1687 n.1.) The Court stated: "The First and Fourteenth Amendments do not permit a State to make criminal the exercise of the right of assembly simply

---

[1]Sabrina Smith's and Tasha White's arrest reports state that they were found loitering in the same area "at 2300 hrs," but the complaints filed against the three of them all state 2200 hours as the time they were found loitering the second time.

because its exercise may be 'annoying' to some people. If this were not the rule, the right of the people to gather in public places for social or political purposes would be continually subject to summary suspension through the good-faith enforcement of a prohibition against annoying conduct." (*Coates*, 402 U.S. at 615, 29 L. Ed. 2d at 218, 91 S. Ct. at 1689.) The Court emphasized that an ordinance cannot make a crime out of conduct that cannot be a crime under the Constitution. *Coates*, 402 U.S. at 616, 29 L. Ed. 2d at 218, 91 S. Ct. at 1689.

The Supreme Court upheld a disorderly conduct statute, as construed by the State court, in *Colten v. Kentucky* (1972), 407 U.S. 104, 32 L. Ed. 2d 584, 92 S. Ct. 1953. The Kentucky statute made it an offense for a person with intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof, to congregate with others in a public place and refuse to comply with a lawful police dispersal order. The Kentucky Court of Appeals construed the statute to apply only where there is no *bona fide* intention to exercise a constitutional right or where the interest to be advanced by the particular exercise of a constitutional right is insignificant in comparison with the inconvenience, annoyance or alarm caused by the exercise. The Supreme Court held that the statute as applied did not chill or stifle the exercise of any constitutional right because the State court made a finding that Colten was not exercising a constitutional right at the time of his arrest and the evidence supported that finding. *Colten*, 407 U.S. at 109, 32 L. Ed. 2d at 589, 92 S. Ct. at 1957.

■ The City's ordinance infringes upon first amendment freedoms in several obvious ways. We read the ordinance to mean that when one gang member stands in public with a group of innocent nongang members, all can be ordered to disperse, and all can be arrested for failing to disperse. The ordinance is triggered when a gang member is observed loitering; the innocent persons' conduct is irrelevant. In other words, the ordinance gives the police power to order dispersal and arrest those who associate with gang members in public places. This smacks of a police-state tactic and clearly violates the first amendment rights of the innocent persons.

That is not to say that the ordinance would be saved if only gang members could be ordered to disperse and arrested, or if the nongang members also had to be found loitering before they could be subject to the ordinance. The ordinance clearly reaches conduct that the government has no business prohibiting. It prohibits loitering, or standing in one place "with no apparent purpose." It does not require that the loitering be done with an intent to cause alarm or anything

of the sort. Standing in one place with no apparent purpose cannot be made a crime, just as assembling on the sidewalks in a manner annoying to passersby could not be made a crime in *Coates*. *Coates*, 402 U.S. at 616, 29 L. Ed. 2d at 218, 91 S. Ct. at 1689.

The circuit court expressed its concern that this ordinance may apply to situations such as a social worker talking to a gang member or two people stargazing. We believe that this ordinance reaches conduct that is just as innocent, but not as obviously so. For example, the ordinance would apply to someone waiting with a friend or family member for a ride to the grocery store, or someone waiting outside a laundromat for his or her clothes to dry. It would also apply to two friends who see each other on the street and stop to talk. Unlike the ordinance in *Colten*, which required intent to cause public inconvenience or alarm, this ordinance is beyond saving by judicial construction.

Finally, we find this ordinance unconstitutional on an independent State ground. Article I, section 5, of the Illinois Constitution ensures the "right to assemble in a peaceable manner." For the reasons stated above, this ordinance also offends that section.

## II

■ Local governments may exercise their police powers in order to regulate conduct in public places that jeopardizes the welfare of the public. "The city is free to prevent people from blocking sidewalks, obstructing traffic, littering streets, committing assaults, or engaging in countless other forms of anti-social conduct." (*Coates v. City of Cincinnati* (1971), 402 U.S. 611, 614, 29 L. Ed. 2d 214, 217, 91 S. Ct. 1686, 1688.) However, a basic principle of due process is that "[all persons] are entitled to be informed as to what the State commands or forbids." (*Lanzetta v. New Jersey* (1939), 306 U.S. 451, 453, 83 L. Ed. 888, 890, 59 S. Ct. 618, 619; see also *Grayned v. City of Rockford* (1972), 408 U.S. 104, 108, 33 L. Ed. 2d 222, 227, 92 S. Ct. 2294, 2298-99.) A criminal statute will be found void for vagueness if it fails to define the offense so that people of ordinary intelligence can understand what conduct is prohibited or if it encourages arbitrary and discriminatory enforcement. *Kolender v. Lawson* (1983), 461 U.S. 352, 357, 75 L. Ed. 2d 903, 909, 103 S. Ct. 1855, 1858; *Papachristou v. City of Jacksonville* (1972), 405 U.S. 156, 162, 31 L. Ed. 2d 110, 115, 92 S. Ct. 839, 843.

A brief overview of the United States Supreme Court rulings on similar ordinances is helpful. In *Papachristou v. City of Jacksonville*, the Supreme Court found the City of Jacksonville's vagrancy ordinance void for vagueness. That ordinance provided: "Rogues and

vagabonds, or dissolute persons who go about begging, common gamblers, persons who use juggling or unlawful games or plays, common drunkards, common night walkers, thieves, pilferers or pickpockets, traders in stolen property, lewd, wanton and lascivious persons, keepers of gambling places, common railers and brawlers, persons wandering or strolling around from place to place without any lawful purpose or object, habitual loafers, disorderly persons, persons neglecting all lawful business and habitually spending their time by frequenting houses of ill fame, gaming houses, or places where alcoholic beverages are sold or served, persons able to work but habitually living upon the earnings of their wives or minor children shall be deemed vagrants and, upon conviction in the Municipal Court shall be punished as provided for Class D offenses." *Papachristou*, 405 U.S. at 156 n.1, 31 L. Ed. 2d at 112 n.1, 92 S. Ct. at 840 n.1.

The court found that the ordinance did not give fair notice as to what conduct was forbidden and that it made criminal "activities which by modern standards are normally innocent." (*Papachristou*, 405 U.S. at 163, 31 L. Ed. 2d at 116, 92 S. Ct. at 844.) The Court noted that the activities forbidden by the ordinance "are historically part of the amenities of life as we have known them." (*Papachristou*, 405 U.S. at 164, 31 L. Ed. 2d at 117, 92 S. Ct. at 844.) The Court also found the ordinance flawed in that it placed unfettered discretion in the hands of the Jacksonville police. (*Papachristou*, 405 U.S. at 168, 31 L. Ed. 2d at 119, 92 S. Ct. at 846.) The law permitted arbitrary and discriminatory enforcement because there were no standards to be followed by the police in their exercise of discretion. (*Papachristou*, 405 U.S. at 170, 31 L. Ed. 2d at 120, 92 S. Ct. at 847.) The Court concluded:

> "A presumption that people who might walk or loaf or loiter or stroll or frequent houses where liquor is sold, or who are supported by their wives or who look suspicious to the police are to become future criminals is too precarious for a rule of law. The implicit presumption in these generalized vagrancy standards—that crime is being nipped in the bud—is too extravagant to deserve extended treatment." *Papachristou*, 405 U.S. at 171, 31 L. Ed. 2d at 120, 92 S. Ct. at 848.

In *Coates v. City of Cincinnati* (1971), 402 U.S. 611, 29 L. Ed. 2d 214, 91 S. Ct. 1686, discussed above, the Court struck down as unconstitutional the Cincinnati loitering ordinance. The Court held that the ordinance was "unconstitutionally vague because it subject[ed] the exercise of the right of assembly to an unascertainable standard," that standard being whether or not a police officer is annoyed. *Coates*, 402 U.S. at 614, 29 L. Ed. 2d at 217, 91 S. Ct. at 1688.

In *Kolender v. Lawson* (1983), 461 U.S. 352, 75 L. Ed. 2d 903, 103 S. Ct. 1855, the challenged criminal statute required those "who loiter or wander on the streets to provide a 'credible and reliable' identification and to account for their presence when requested by a peace officer under circumstances that would justify a stop under the standards of *Terry v. Ohio*, 392 U.S. 1 (1968)." (*Kolender*, 461 U.S. at 353, 75 L. Ed. 2d at 906, 103 S. Ct. at 1856.) The Court held that the statute, as it had been construed, was unconstitutionally vague. (*Kolender*, 461 U.S. at 353, 75 L. Ed. 2d at 906, 103 S. Ct. at 1856.) The statute provided no standards by which to determine whether the alleged offender had satisfied the requirement of providing a "credible and reliable" identification. The statute placed complete discretion in the hands of the police and created the " 'potential for arbitrarily suppressing First Amendment liberties.' " (*Kolender*, 461 U.S. at 358, 75 L. Ed. 2d at 910, 103 S. Ct. at 1859, quoting *Shuttlesworth v. City of Birmingham* (1965), 382 U.S. 87, 91, 15 L. Ed. 2d 176, 179, 86 S. Ct. 211, 213.) The Court also noted that the statute implicated "consideration of the constitutional right to freedom of movement." *Kolender*, 461 U.S. at 358, 75 L. Ed. 2d at 910, 103 S. Ct. at 1859.

An otherwise unconstitutionally vague provision can be saved by a strict reading from the State's judiciary. In *Shuttlesworth v. City of Birmingham* (1965), 382 U.S. 87, 15 L. Ed. 2d 176, 86 S. Ct. 211, the ordinance at issue provided:

> "It shall be unlawful for any person or any number of persons to so stand, loiter or walk upon any street or sidewalk in the city so as to obstruct free passage over, on or along said street or sidewalk. It shall also be unlawful for any person to stand or loiter upon any street or sidewalk of the city after having been requested by any police officer to move on." *Shuttlesworth*, 382 U.S. at 88, 15 L. Ed. 2d at 178, 86 S. Ct. at 212.

The Court found that literally read, the second part of this ordinance provided that a person could stand on a public sidewalk in Birmingham only at the whim of a police officer. (*Shuttlesworth*, 382 U.S. at 90, 15 L. Ed. 2d at 179, 86 S. Ct. at 213.) The Court stated, "[t]he constitutional vice of so broad a provision needs no demonstration." (*Shuttlesworth*, 382 U.S. at 90, 15 L. Ed. 2d at 179, 86 S. Ct. at 213.) However, the Alabama Court of Appeals ruled that the ordinance applied only when a person who stands, loiters, or walks on a street or sidewalk so as to obstruct free passage or refuses to obey a request by an officer to move on. (*Shuttlesworth*, 382 U.S. at 91, 15 L. Ed. 2d at 180, 86 S. Ct. at 214.) The Court accepted the State judicial construction of the ordinance and held that the ordinance was not unconstitutional when construed in such a way. *Shuttlesworth*, 382 U.S. at 91, 15 L. Ed. 2d at 180, 86 S. Ct. at 214.

Defendants claim that the Chicago gang ordinance is void for vagueness because it does not sufficiently define what conduct is prohibited. The ordinance defines loitering as remaining in one place with "no apparent purpose." The circuit court found that the ordinance gives police complete discretion in deciding whom to stop. The City argues that "to remain in any one place with no apparent purpose" has a commonsense meaning of "doing nothing" and the word "loiter" has never been held to be unconstitutionally vague. The City also contends that the ordinance resolves any ambiguities with the requirement that actual notice be given in the form of a police order to disperse.

Although it may be true that the word "loiter" is not unconstitutionally vague, the loitering ordinances which have been upheld have included some type of description or requirement *in addition* to the word "loiter" to describe the conduct prohibited. For example, in *Shuttlesworth*, the ordinance was construed to prohibit loitering so "as to obstruct free passage." (*Shuttlesworth*, 382 U.S. at 91, 15 L. Ed. 2d at 179, 86 S. Ct. at 213.) In *City of Milwaukee v. Nelson* (1989), 149 Wis. 2d 434, 439 N.W.2d 562, the Wisconsin Supreme Court upheld an ordinance prohibiting loitering "in a place, at a time, or in a manner not usual for law-abiding individuals under circumstances that warrant alarm for the safety of persons or property in the vicinity." (*Nelson*, 149 Wis. 2d at 438 n.1, 439 N.W.2d at 563 n.1.) The ordinance provided certain factors that the police officers could consider in determining whether alarm is warranted. See also *Bell v. State* (1982), 252 Ga. 267, 313 S.E.2d 678; *State v. Ecker* (Fla. 1975), 311 So. 2d 104.

In *City of Tacoma v. Luvene* (1992), 118 Wash. 2d 826, 827 P.2d 1374, the ordinance prohibited loitering "in a manner and under circumstances manifesting the purpose to engage in drug-related activity." (*Luvene*, 118 Wash. 2d at 836, 827 P.2d at 1379.) The Washington Supreme Court upheld the ordinance because it determined that an ordinary person would read the ordinance as prohibiting loitering in public and performing actions commonly associated with drug dealing. *Luvene*, 118 Wash. 2d at 846, 827 P.2d at 1385.

■ As stated above, we believe it would be impossible to save the Chicago ordinance by judicial construction. The ordinance does not qualify the term "loiter" in any way. It is simply the act of loitering by a gang member with others that triggers the ordinance. Furthermore, the fact that a police order to disperse must be disobeyed before an arrest does not save the ordinance from being unconstitutionally vague. A person cannot be punished for failing to obey a police order that is itself unconstitutional. *Wright v. Georgia* (1963), 373 U.S. 284, 291-92, 10 L. Ed. 2d 349, 355, 83 S. Ct. 1240, 1245.

We note that the Chicago police department is not a judicial agency and has no power to make a judicial determination of the meaning of an ordinance. Regardless, the department's construction and enforcement of the ordinance does not save it from being unconstitutionally vague. Although the department's general order provides standards for determining who is a gang member, the order does nothing to limit the complete discretion a police officer has in determining whether a person has "no apparent purpose" for remaining in one place. The ordinance and general order are also completely silent as to exactly how fast and how far the persons have to disperse in order to avoid arrest.

The United States Supreme Court has determined that "the most important aspect of the vagueness doctrine 'is not actual notice, but *** the requirement that a legislature establish minimal guidelines to govern law enforcement.' " (*Kolender*, 461 U.S. at 358, 75 L. Ed. 2d at 909, 103 S. Ct. at 1858, quoting *Smith v. Goguen* (1974), 415 U.S. 566, 574, 39 L. Ed. 2d 605, 613, 94 S. Ct. 1242, 1248.) The City has failed to establish such guidelines here. For these reasons, we find this statute void for vagueness. Not only does it violate the principles of due process, but it also has a chilling effect on the exercise of first amendment rights. *Grayned v. City of Rockford* (1972), 408 U.S. 104, 109, 33 L. Ed. 2d 222, 228, 92 S. Ct. 2294, 2299.

### III

■ We further find that the gang-loitering ordinance unconstitutionally criminalizes a person's status. In *Robinson v. California* (1962), 370 U.S. 660, 8 L. Ed. 2d 758, 82 S. Ct. 1417, the Supreme Court struck down a California statute which made it a misdemeanor for any person to be a drug addict. The Court held that the law violated the eighth amendment's cruel and unusual punishment clause because it made the status of drug addict a criminal offense regardless of whether the defendant had ever used or possessed drugs within the State. *Robinson*, 370 U.S. at 667, 8 L. Ed. 2d at 763, 82 S. Ct. at 1420-21.

The Court later held in *Powell v. Texas* (1968), 392 U.S. 514, 20 L. Ed. 2d 1254, 88 S. Ct. 2145, that an alcoholic could be found guilty of violating a statute that punished him for appearing in public while drunk. "Criminal penalties may be inflicted only if the accused *** has committed some *actus reus*." (*Powell*, 392 U.S. at 533, 20 L. Ed. 2d at 1268, 88 S. Ct. at 2154-55.) Since the statute did not punish the alcoholic when he appeared in public while sober, the statute punished conduct and not status.

A loitering ordinance was found to unconstitutionally criminalize

status in *Farber v. Rochford* (N.D. Ill. 1975), 407 F. Supp. 529. The Chicago ordinance at issue in *Farber* provided "It shall be unlawful for any habitual drunkard, any person known to be a narcotic addict, any person known to be a prostitute, or any person who aids or abets prostitution, or for any person previously convicted of a felony, of prostitution, or of aiding and abetting prostitution, to assemble or congregate with other persons of any of the foregoing classes in or upon the public ways or other public places in the city or to loaf or loiter in or about or frequent the premises of any place where intoxicating liquors are sold." (*Farber*, 407 F. Supp. at 530.) Besides finding the ordinance unconstitutionally vague, the court also found that the ordinance focused on the status of a person rather than a person's conduct as a determinative factor of guilt. (*Farber*, 407 F. Supp. at 533.) The court rejected the argument that the ordinance did not make it an offense to be a habitual drunkard or prostitute but rather prohibited the *act* of congregating or loitering by these persons. "There is no *actus reus* at all required by the ordinance, only conduct which, while occasionally an 'adjunct' to illicit behavior, is of itself perfectly defensible." *Farber*, 407 F. Supp. at 533.

We see little, if any, difference between the ordinance struck in *Farber* and the ordinance at issue here. The City argues that the ordinance applies to conduct and not status because it applies equally to loiterers whether or not they are members of a criminal street gang. We have to disagree. Once the ordinance is triggered, it may apply equally to persons regardless of gang membership, but the ordinance can only be triggered when a gang member is found loitering. In other words, the Chicago ordinance prohibits gang members from loitering because they are gang members, not because they are loitering. Nongang members and those not associating with gang members are not prohibited from loitering. Therefore, it is not the conduct, but the status, that triggers this ordinance.

## IV

We finally note that the ordinance jeopardizes the rights guaranteed under the fourth amendment. The fourth amendment permits law enforcement officials to arrest a person only when there is probable cause to believe that person has committed or is committing a crime. (*Tennessee v. Garner* (1985), 471 U.S. 1, 7, 85 L. Ed. 2d 1, 7, 105 S. Ct. 1694, 1699.) In reference to a vagrancy ordinance, the Supreme Court stated in *Papachristou*:

"We allow our police to make arrests only on 'probable cause' ***. Arresting a person on suspicion, like arresting a person for investigation, is foreign to our system, even when the arrest is for

past criminality. Further criminality, however, is the common justification for the presence of vagrancy statutes." *Papachristou,* 405 U.S. at 169, 31 L. Ed. 2d at 119, 92 S. Ct. at 847.

This ordinance seems to us a transparent attempt to avoid the probable cause requirement. The City cited the difficulty police officers have in finding probable cause to arrest a gang member for crimes such as drug trafficking, vandalism, or intimidation, as a reason for promulgating the ordinance. The City cannot overcome this difficulty by making it a crime to be a gang member in a public place. Gang membership itself is not a crime, and standing in a public place with no apparent purpose is not a crime. Adding these actions together does not make them any more criminal. When you add nothing to nothing, you get nothing. The fact that gang members may have a higher propensity to commit crime does not give the City the authority to allow arrests without probable cause.

We appreciate the magnitude of the gang-related criminal activity and the adverse effects it has on our communities. However, our constitutional standards, fortunately, do not slide up and down a scale according to the gravity of the crime problem we wish to combat. If it were otherwise, the fundamental ideals on which this country is based would slowly deteriorate.

Accordingly, for the foregoing reasons, the order of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL, P.J., and WOLFSON, J., concur.