116 N.J. Super. 531 (1971)
283 A.2d 122
PHILIP CAMARCO, JR., A CITIZEN AND RESIDENT OF NEW JERSEY, AND RUTH SEGLIN, A CITIZEN AND RESIDENT OF THE CITY OF ORANGE, PLAINTIFFS-APPELLANTS,
v.
CITY OF ORANGE, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, GENNARO D'ANGELIS, IN HIS CAPACITY AS DIRECTOR OF THE POLICE DEPARTMENT OF THE CITY OF ORANGE, JOSEPH MAGRINO, IN HIS CAPACITY AS CORPORATION COUNSEL OF THE CITY OF ORANGE, AND THOMAS J. FREDA, IN HIS CAPACITY AS CLERK OF THE MUNICIPAL COURT OF THE CITY OF ORANGE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 6, 1971.
Decided October 18, 1971.
*532 Before Judges KILKENNY, LABRECQUE and LANE.
Mr. Joseph Lunin argued the cause for appellants (Mr. Mitchell Melnikoff, attorney; Mr. Lunin, of counsel and on the brief).
Mr. Stanley L. Wang argued the cause for respondents.
*533 The opinion of the court was delivered by LANE, J.A.D.
Plaintiffs sought a declaratory judgment that an ordinance of the City of Orange amended October 7, 1969, prohibiting loitering under certain conditions was "illegal and unconstitutional and in violation of the Constitutions of the United States and of New Jersey." On cross-motions for summary judgment the trial court entered judgment dismissing the complaint. The judgment was based upon a written opinion which construed the ordinance as providing that an offense was committed under its terms only when the offender was engaging in the conduct prohibited in section 2 and refused to move along after being requested to do so by a police officer. Plaintiffs appeal.
The procedural history is set forth in the opinion of the trial court, 111 N.J. Super. 400, and will not be repeated. Defendants do not appeal from the holding that plaintiffs have standing to bring the action.
The pertinent portions of the ordinance are:
SECTION 1. Definitions. As used in this Section.
(a) "Loitering" shall mean remaining idle in essentially one location and shall include the concepts of spending time idly loafing or walking about aimlessly, and shall also include the coloquial [sic] expression "hanging around."
SECTION 2. Certain Types of Loitering Prohibited.
No person shall loiter in a public place in such manner as to:
(a) Create or cause to be created a danger of a breach of the peace.
(b) Create or cause to be created any disturbance or annoyance to the comfort and repose of any person.
(c) Obstruct the free passage of pedestrians or vehicles.
(d) Obstruct, molest, or interfere with any person lawfully in any public place as defined in Section 1 (b). This paragraph shall include the making of unsolicited remarks of an offensive, disgusting or insulting nature or which are calculated to annoy or disturb the person to, or in whose hearing, they are made.
SECTION 3. Discretion of Police Officer.
Whenever any police officer shall, in the exercise of reasonable judgment, decide that the presence of any person in any public place is causing or is likely to cause any of the conditions enumerated in Section 2, he may, if he deems it necessary for the preservation of the public peace and safety, *534 order that person to leave that place. Any person who shall refuse to leave after being ordered to do so by a police officer shall be guilty of a violation of this Section.
Plaintiffs argue that the ordinance fails to sufficiently define the proscribed conduct, that it is so broad and encompassing as to impair the freedoms of speech and expression, and that it grants excessive decision-making power to police to determine the criminality of conduct.
The municipality has the right to regulate the use of its streets and other public facilities to assure safety and convenience of citizens in their use. Cf. Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965). An ordinance which results in restriction of movement must contain standards in order to be reasonable and prevent arbitrary enforcement. State v. Caez, 81 N.J. Super. 315, 319 (App. Div. 1963).
Even though a statute [or ordinance] may be open to a construction which would render it unconstitutional or permit its unconstitutional application, it is the duty of [the] Court to so construe the statute [or ordinance] as to render it constitutional if it is reasonably susceptible to such construction. [State v. Profaci, 56 N.J. 346, 350 (1970)]
See also United States v. Harriss, 347 U.S. 612, 618, 74 S.Ct. 808, 812, 98 L.Ed. 989, 996-997; Screws v. United States, 325 U.S. 91, 98, 65 S.Ct. 1031, 1033, 89 L.Ed. 1495, 1500 (1945); Adams Newark Theatre Co. v. Newark, 22 N.J. 472, 478 (1956), aff'd 354 U.S. 931, 77 S.Ct. 1395, 1 L.Ed.2d 1533 (1957); Woodhouse v. Woodhouse, 17 N.J. 409 (1955); Silco Auto. Vending Co. v. Puma, 105 N.J. Super. 72, 92 (Law Div. 1969).
If the sole act of loitering were proscribed by the ordinance, it would be invalid. State v. Caez, 81 N.J. Super. 315, supra; People v. Diaz, 4 N.Y.2d 469, 176 N.Y.S.2d 313, 151 N.E.2d 871 (Ct. App. 1958); Commonwealth v. Carpenter, 325 Mass. 519, 91 N.E.2d 666 (Sup. Jud. Ct. 1950); City of Akron v. Effland, 112 Ohio App. 15, 174 *535 N.E.2d 285 (Ct. App. 1960). The ordinance under review, however, only proscribes loitering which brings about the conditions enumerated in section 2.
Section 2(a) proscribes loitering which causes "a danger of a breach of the peace."
Restatement of Torts 2d (1965), § 116, at 192, defines breach of the peace as "a public offense done by violence, or one causing or likely to cause an immediate disturbance of public order."
Black's Law Dictionary (rev. 4th ed. 1968) defines breach of the peace as:
A violation or disturbance of the public tranquillity and order. The offense of breaking or disturbing the public peace by any riotous, forcible, or unlawful proceeding. [cit. omit.] "Breach of the peace" is a generic term [cit. omit.] and includes all violations of public peace or order and acts tending to a disturbance thereof, [cit. omit.]. One who commits a breach of the peace is guilty of disorderly conduct, but not all disorderly conduct is necessarily a "breach of the peace." [cit. omit.] [at 236]
In Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), defendants were Jehovah's Witnesses who had been convicted of a violation of a statute proscribing solicitation of contributions and of the common law offense of inciting a breach of the peace. Justice Roberts for the Supreme Court held that the statute in question, as construed and applied, violated the due process clause of the Fourteenth Amendment and that the facts were not sufficient to support a conviction of inciting a breach of the peace. In deciding on the latter issue, Justice Roberts discussed the definition of "breach of the peace." He said:
The offense known as breach of the peace embraces a great variety of conduct destroying or menacing public order and tranquility. It includes not only violent acts but acts and words likely to produce violence in others. * * * When clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order, appears, the power of the state to prevent or punish is obvious. * * * [310 U.S. at 308, 60 S.Ct. at 905]

*536 * * * * * * * *
* * * One may, however, be guilty of the offense if he commit acts or make statements likely to provoke violence and disturbance of good order, even though no such eventuality be intended. Decisions to this effect are many, but examination discloses that, in practically all, the provocative language which was held to amount to a breach of the peace consisted of profane, indecent, or abusive remarks directed to the person of the hearer. Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument. [Id., at 309-310, 60 S.Ct. at 906]
Section 2(a) proscribes only such loitering conduct as clearly will cause an immediate, actual, physical violent reaction from any person, which violent reaction will cause a threat to the peace and order of the public. See the following cases construing provisions of the Disorderly Persons Act, N.J.S.A. 2A:170-1 et seq.: State v. Profaci, 56 N.J. 346, supra; State v. Smith, 46 N.J. 510, cert. den. 385 U.S. 838, 87 S.Ct. 85, 17 L.Ed.2d 71 (1966); State v. Morgulis, 110 N.J. Super. 454 (App. Div. 1970); State v. Besson, 110 N.J. Super. 528 (App. Div. 1970); State v. Zito, 103 N.J. Super. 552 (App. Div. 1968), aff'd 54 N.J. 206 (1969).
Section 2(b) proscribes loitering which creates "any disturbance or annoyance to the comfort or repose of any person." This language is very similar to the language in N.J.S.A. 2A:170-28, "any person who by noisy or disorderly conduct disturbs or interferes with the quiet or good order of any place of assembly * * *." The validity of that provision has been upheld as not being void for vagueness. State v. Smith, 46 N.J. 510, supra.
In Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), defendant was convicted under a New Hampshire statute which provided that:
No person shall address any offensive, derisive or annoying word to any other person who is lawfully in any street or other public place, nor call him by any offensive or derisive name, nor make any noise or exclamation in his presence and hearing with intent to deride, *537 offend or annoy him, or to prevent him from pursuing his lawful business or occupation. [315 U.S. at 569, 62 S.Ct. at 768]
In upholding the constitutionality of the statute, Justice Murphy said:
On the authority of its earlier decisions, the state court declared that the statute's purpose was to preserve the public peace, no words being "forbidden except such as have a direct tendency to cause acts of violence by the person to whom, individually, the remark is addressed." It was further said: "The word `offensive' is not to be defined in terms of what a particular addressee thinks. * * * The test is what men of common intelligence would understand would be words likely to cause an average addressee to fight. * * * The English language has a number of words and expressions which by general consent are `fighting words' when said without a disarming smile. * * * Such words, as ordinary men know, are likely to cause a fight. So are threatening, profane or obscene reviling. Derisive and annoying words can be taken as coming within the purview of the statute as heretofore interpreted only when they have this characteristic of plainly tending to excite the addressee to a breach of the peace. * * * The statute, as construed, does no more than prohibit the face-to-face words plainly likely to cause a breach of the peace by the addressee, words whose speaking constitute a breach of the peace by the speaker  including `classical fighting words', words in current use less `classical' but equally likely to cause violence, and other disorderly words, including profanity, obscenity and threats. [Id. at 573, 62 S.Ct. at 770]
In In re B.N., 99 N.J. Super. 30 (App. Div. 1968), the court held valid an ordinance proscribing loud, offensive, disorderly, threatening, abusive, or insulting language and offensive, disorderly, threatening, abusive or insulting manner. Judge Labrecque stated:
We are satisfied that the conduct here intended to be prohibited by the ordinance is not fairly susceptible of definition in other than the general language here used. The actions prohibited are such as would usually be considered as having a direct tendency to cause acts of violence by the persons to whom addressed. * * * [at 35-36]
Section 2(b) proscribes loitering which will so disturb a person as to cause such person to react immediately in such a way as to threaten by physical violence the peace and order *538 of the public. Thus the ordinance differs from that before the court in Coates v. Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971).
Section 2(c) proscribes loitering which obstructs the free passage of pedestrians or vehicles. There is nothing vague about the conduct proscribed by this portion of the ordinance. Cameron v. Johnson, 390 U.S. 611, 616, 88 S.Ct. 1335, 1338, 20 L.Ed.2d 182, 187 (1968).
Section 2(d) proscribes loitering when it will "obstruct, molest, or interfere with any person lawfully in any public place as defined in section 1(b). This paragraph shall include the making of unsolicited remarks of an offensive, disgusting or insulting nature or which are calculated to annoy or disturb the person to, or in whose hearing, they are made." The first sentence of that section is clear and suffers from no possible constitutional infirmity. What we have said above concerning section 2(b) applies with equal force to the second sentence of this section.
As we have construed the ordinance above and reading section 3 solely as a condition to the commission of a violation of section 2, it is a proper exercise by the City of Orange of its delegated powers and is not in violation of either the United States or the New Jersey Constitutions.
The judgment appealed from is affirmed.