Gary WALDRON, Plaintiff,

v.

Joseph McATEE, as Chief of Police of the Indianapolis Police Department, William Hudnut, as the Mayor of the City of Indianapolis; and the Marion County City-County Council, Defendants.

No. IP 81–750–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Jan. 19, 1983.

**102**

Richard L. Zweig, Indianapolis, Ind., for plaintiff.

John P. Ryan, Corp. Counsel, Indianapolis, Ind., Mark Dall, Stephen E. Schrumpf, Asst. Corp. Counsels, for defendants.

## FINDINGS OF FACT CONCLUSIONS OF LAW AND JUDGMENT

HOLDER, District Judge.

This matter comes before the Court on the plaintiff's motion for summary judgment of February 9, 1982 and on the defendants' March 22, 1982 cross-motion for summary judgment on the issues of the July 13, 1981 complaint and the September 17, 1981 answer consisting of two defenses thereto. The parties rested on the briefs filed in support of their respective motions and declined to file any additional pleadings on the matter. The Court being duly advised in the premises, does now submit its ruling.

Joseph McAtee is the Chief of Police of the Indianapolis Police Department; William Hudnut is the Mayor of the City of Indianapolis, Indiana; the Marion County City-County Council is the duly authorized legislative arm of the Consolidated City of Indianapolis-Marion County, Indiana.

On November 1, 1980 the plaintiff, an adult citizen of Marion County, Indiana and two companions were confronted by three members of the Indianapolis police force in front of the Marion County Public Library, located in the downtown section of Indianapolis, at approximately midnight. The policemen asked the three to explain why they were in that particular spot at that particular hour of the night and informed them that they were violating the loitering ordinance then in effect in Indianapolis. The plaintiff challenged the power of the officers to detain the group, and the hour-long discussion ended with the plaintiff being threatened with arrest for disorderly conduct if he did not leave the scene immediately. The plaintiff was also told that if he was seen in the neighborhood at night he would be arrested for loitering. No arrests resulted from the interchange.

The plaintiff instituted this action on July 13, 1981 seeking a declaration that the Indianapolis loitering ordinance, Title 20, Section 20–9 of the Code of Indianapolis and Marion County (the Act), is unconstitutionally vague and overbroad. The action was brought under 42 U.S.C. § 1983 and 28 U.S.C. § 1343, and also seeks an injunction against the enforcement of the Act, as well as attorney's fees under 42 U.S.C. § 1988. A copy of the Act is attached hereto as Exhibit A and by such reference incorporated herein.

To invoke federal declaratory relief, the plaintiff must demonstrate the existence of a case or controversy within the Federal Constitution and the Declaratory Judgment Act. In this instance, he must show a genuine, credible threat that he might be arrested and charged with loitering under the Act. The plaintiff in this case has made such a showing. Because no arrest was made under the Act, however, there is no basis to determine the constitutionality of the Act as applied in the plaintiff's particular case. Accordingly, this Court will confine its analysis to a facial evaluation of the challenged terms of the Act to determine whether they are so vague and indefinite as to render the Act unconstitutional, and also as to whether the Act is so broad as to infringe upon the rights secured by the First Amendment.

The Act proscribes loitering in such a manner that creates, or causes to be created, either 1) "danger of a breach of the peace"; 2) the unreasonable danger of a "disturbance to the comfort and repose of any person acting lawfully"; 3) the obstruction, or attempted obstruction, of vehicular or pedestrian traffic; or 4) the obstruction, molestation, or interference with persons so

as to cause those persons to fear for their safety. The Act specifically does not permit a person to "loiter or prowl" in a place, "at a time or in a manner not usual for law abiding citizens," under circumstances warranting a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity. An arrest is authorized only after the person either refuses to obey a police officer's lawful command to move on or refuses to give the officer a lawful reason for remaining on the public way. Attempted flight from an identified police officer, attempted concealment from the officer, or refusal to provide identification will also authorize an arrest. The Act is, essentially, in two identical parts, the first directed at the conduct of individuals and the second directed at the conduct of groups of three or more persons.

The plaintiff attacks the passages of the Act that are quoted in the above paragraph as being so vague as to fail to inform the person of average intelligence of what conduct is proscribed by the Act or, in the case of the phrase "danger of a breach of the peace," that it is so indefinite as to delegate to police officers the power to determine what conduct is illegal and to enforce the Act arbitrarily and discriminatorily. In addition to these claims, which are grounded in the Due Process Clause of the Fourteenth Amendment, the plaintiff asserts that the ordinance is so broad as to reach conduct, speech and assembly, that is protected by the First Amendment.

The Indiana Supreme Court has not authoritatively interpreted the Act; therefore, this Court must give the Act the interpretation that it most likely would have received by the state's highest court. Abstention is inappropriate in this instance.

■ The Due Process Clause of the Fourteenth Amendment provides that no "State shall deprive any person of life, liberty or property without due process of law." As a matter of due process, a criminal statute must give a person of common intelligence fair notice that certain behavior is forbidden by law, and the statute must not be so indefinite as to encourage erratic and arbitrary arrests or convictions. Where the offense is difficult to define, or where it is difficult to lay down a rule of conduct in more exact terms which would at the same time cover all of the varying conditions, the statute is not unconstitutionally vague so long as the general area of conduct against which the statute is directed is made plain. The entire text of the statute may furnish an adequate standard of definiteness and words which have well settled common law meanings can be used. A construction that is narrower than the literal meaning of the language of the law can be used to save the statute, but the court must give the language its fair meaning in accord with the evident intention of the legislature. If any reasonable and practical construction can be given, the law's language cannot be held void. There is a strong presumptive validity of legislation, and a statute is not vague just because it is difficult to determine whether certain marginal offenses fall within the law. If the general class of offenses at which the act is aimed can be made constitutionally definite by a reasonable construction of the statute, that construction must be applied; all that is necessary is that the statute's language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.

■ While the Indiana Supreme Court has not considered the constitutionality of a loitering statute that is challenged as facially vague and overbroad, it has held that a penal statute must be sufficiently explicit so as to inform individuals of common intelligence as to what the consequences of their contemplated conduct will be. A statute is to be presumed constitutional, but must be strictly construed against the state. The act need not, however, be construed so narrowly as to exclude cases fairly covered by it, and if the language supports a construction which is constitutional, that construction must be adopted. Under the common law of the State of Indiana, constitutional challenges to laws on the basis of vagueness must prove that the statute in question has no reasonable basis and that the law is incapably applied to any factual situation.

An ordinance making the sole act of loitering, or prowling, a crime would unquestionably violate the Due Process Clause. The Act, however, only prohibits loitering or prowling under certain circumstances, and then only when certain results occur. The words "loiter or prowl" have by long usage acquired common and accepted meanings. To loiter is to dawdle, to be dilatory, to delay, to linger, to saunter, or to stand or spend time idly. *Black's Law Dictionary* 849 (5th ed. 1979); *Webster's Dictionary of the English Language, Unabridged Encyclopedic Edition* 1064 (1977). To prowl is to rove or wander in a stealthy manner in search of prey, or to rove or wander stealthily particularly for prey. *Id.* at 1450. The use of general terms does not render an act unconstitutional, and loitering or prowling under described conditions may validly be included within an offense. Analysis of the entire text of the Act, giving the language its fair meaning in accord with the evident intention of the legislature and applying a reasonable and practical construction, makes plain the general area of conduct at which the Act is aimed.

One of the conditions which must exist before a person's loitering or prowling falls within the Act is that it must occur "at a time or in a manner not usual for law abiding citizens." While the general area of conduct at which the Act is aimed is plain, it is difficult to lay down a rule of conduct in more exact terms which would at the same time cover all of the varying circumstances which may lead to a violation of the Act. 26 U.S.C. § 7201, part of the Internal Revenue Code of 1954, provides that a person who attempts to defeat or evade any tax "in any manner" commits a felony. The phrase "in any manner" has been applied in cases so numerous that citation would not be beneficial, the courts holding that to require Congress to define or limit the manner by which one evaded taxes might result in unexpected limitations. To require that all manners in which one violates the Act be defined would similarly lead to unexpected limitation, and would require tomes to contain all of the definitions. The offenses at which the Act is aimed, though plain, are difficult to define, and the proscription of those offenses must necessarily be designedly general in nature to allow a determination of whether the Act is being violated to be made in light of the particular and individual facts of each case. A person who loiters or prowls "at a time or in a manner not usual for law abiding citizens" may not be arrested under the Act unless: that person does so under circumstances warranting reasonable, justified alarm or immediate concern for the safety of persons or property in the vicinity; the person refuses to obey a lawful command to move on or refuses to provide the police officer with a lawful reason for remaining on the public way; and, the person's loitering creates or causes to be created, *inter alia*, "a danger of a breach of the peace" or an unreasonable disturbance to the "comfort and repose of any person acting lawfully."

The plaintiff contends that a disturbance to the comfort and repose of a person is merely a disturbance that annoys someone. This analysis is centered on the dictionary definition of the word "annoy", which includes "to disturb or ... interfere with comfort or peace of mind." It is claimed that the language used in the Act must be interpreted as banning annoying conduct and that such a ban is unconstitutional. *See Coates v. Cincinnati,* 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971). If the language of a statute supports a construction which is constitutional, that construction must be adopted. A statutory ban on conduct which disturbs the comfort and repose of a person acting lawfully has been construed as banning only that conduct which so disturbs a person of ordinary sensibilities as to cause that person to react immediately in such a way as to threaten by physical violence the peace and order of the public. *Camarco v. City of Orange,* 116 N.J.Super. 531, 283 A.2d 122 (1971), *aff'd,* 61 N.J. 463, 295 A.2d 353 (N.J.1972). A ban on "fighting words" has been held constitutional. *Chaplinsky v. State of New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). Thus, a fair construction of

the language is that the intent of the City-County Council was to ban conduct which so disturbs a person as to cause that person to react with violence toward the perpetrator of the conduct.

In Indiana, a breach of the peace occurs when the public peace, order, or decorum is violated through any riotous, forceful, or unlawful act. *Census Federal Credit Union v. Wann,* 403 N.E.2d 348, 350 (Ind.App. 1980). A breach of the peace may also be an element of other offenses, such as disorderly conduct, which "involves breaches of the peace as its proscriptions include fighting or tumultuous conduct, disruption of lawful assembly, obstruction of vehicular traffic, and rioting. Ind.Code 35–45–1–3 (Supp.1979)." *Id.* at 351. "When there is clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order, the power of the state to prevent or punish is obvious." *Cantwell v. State of Connecticut,* 310 U.S. 296, 308, 60 S.Ct. 900, 905, 84 L.Ed. 1213 (1940). The Act requires a police officer to request a lawful explanation from a person or to lawfully command that person to leave the vicinity before an arrest may be made. Flight from an identified police officer, attempted concealment, or a refusal to identify oneself are also grounds for arrest under the Act. A conviction will not result under the Act if the arresting officer fails to comply with the procedures outlined within the Act. Accordingly, before an officer may arrest someone for creating, or causing to be created, a danger of a breach of the peace, there must be a "clear and present danger" of a riotous, forceful, or unlawful act which poses an immediate threat to the public order and the officer must request an explanation from the actor and request that the actor cease causing the threat to the public order. The Act does not allow for arbitrary or discriminatory arrests or convictions, in that the police officer is constrained by the "clear and present danger" guidelines, by the definition of the offense of breach of the peace, and by the language of the Act itself.

In summary, the Act is not so vague as to fail to inform the person of ordinary intelligence of what conduct is proscribed. Instead, the evident intent of the City-County Council is to prevent four specific types of disturbances. The ban on conduct creating a danger of a breach of the peace is aimed at the general area of crowd control, i.e., inciting riots, rioting, or disturbing lawful assemblies. The ban on conduct which disturbs the comfort and repose of any citizen acting lawfully is aimed at the more narrow general area of fighting, i.e., between groups or between individuals. The ban on conduct causing the obstruction of vehicular or pedestrian traffic, unchallenged by the plaintiff, is aimed at the general area of the right to freely come and go in public places. The ban on conduct causing the obstruction, molestation, or interference with persons so as to cause those persons to fear for their safety, unchallenged by the plaintiff, is aimed at the general area of the protection of the physical safety of users of the public way. A statute is not unconstitutionally vague so long as the general area of conduct against which the statute is directed is made plain, and this is especially so where, as here, it is difficult to define the offenses and to lay down in more exact terms a rule of conduct which would at the same time cover all of the varying conditions. The use of general terms is necessary and does not render the statute unconstitutionally vague. A statute will not be declared unconstitutional merely because it could have been more clearly drafted.

Even where a statute is not so vague as to deny notice to persons of ordinary intelligence that their contemplated conduct is illegal, if the statute is susceptible of application to conduct protected by the First Amendment it must be held unconstitutional as overbroad. Where conduct, and not merely speech, is involved, the overbreadth, judged in relation to the statute's plainly legitimate sweep, must be both real and substantial. The Act does not specifically proscribe any type of speech; it proscribes loitering in such a manner and un-

der such circumstances as to create or cause to be created four specific types of disturbances, and whatever speech is prohibited by the Act is the type that causes disturbances that fall within one of the enumerated categories. Lewd and obscene speech, profanity, libelous speech, and such language that by its very utterance tends to incite immediate breaches of the peace or inflicts injury may constitutionally be prevented and punished. The only speech that would fall within the Act, as construed herein, is that which may be constitutionally limited: fighting words or words which create a clear and present danger of an immediate threat to the public order. Accordingly, the Act is not overbroad in that the only speech, if any, that is proscribed by it is not protected by the Constitution.

There are no genuine issues as to any material fact.

The law is with the defendant and against the plaintiff.

The Act is not so vague or overbroad as to render it unconstitutional.

Any of the above findings of fact that may be construed as conclusions of law shall be deemed conclusions of law, and any of the above conclusions of law that may be construed as findings of fact shall be deemed findings of fact.

## JUDGMENT

It is hereby ADJUDGED that Title 20, Section 20–9 of the Code of Indianapolis and Marion County is sufficiently clear and precise so as to provide fair notice to persons of ordinary intelligence of what conduct is proscribed, and is narrowly tailored so that it does not reach rights secured by the First Amendment to the Constitution of the United States;

It is further ADJUDGED that the plaintiff take nothing by virtue of this action and that civil action number IP 81–750–C is DISMISSED WITH PREJUDICE;

It is further ADJUDGED that the costs of this action be assessed against the plaintiff.

EXHIBIT A

PROPOSAL NO. 36, 1979

Committee Recommendations

AS AMENDED

CITY–COUNTY GENERAL ORDINANCE NO. 9, 1979

A GENERAL ORDINANCE amending the Code of Indianapolis and Marion County by amending Section 20–9 to make the provisions dealing with loiterers, unlawful assemblies, and vagrants more precise and workable.

BE IT ORDAINED BY THE CITY–COUNTY COUNCIL OF THE CITY OF INDIANAPOLIS AND OF MARION COUNTY, INDIANA:

SECTION 1. Article I of Chapter 20 of the Code of Indianapolis and Marion County is hereby amended by repealing the existing Section 20–9 and adding a new Section 20–9 to read as follows:

Sec. 20–9. Loitering, Unlawful Assemblies.

(a) LOITERING. No person shall loiter or prowl in a place, at a time or in a manner not usual for law abiding citizens, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity, in any public way, street, highway, place, or alley and refuse to obey the lawful command of a police officer to move on or provide to said police officer a lawful reason for remaining on said public way, street, highway, place or alley if the alleged loitering by said person would create or cause to be created any of the following:

(1) Danger of a breach of the peace;

(2) The unreasonable danger of a disturbance to the comfort and repose of any person acting lawfully on or in a public way, street, highway, place, or alley reserved for pedestrians;

(3) The obstruction or attempted obstruction of the free normal flow of vehicular traffic or the normal passage of pedestrian traffic upon any public way, street, highway, place, or alley;

(4) The obstruction, molestation or interference or attempt to obstruct, molest or interfere with any person lawfully on or in a public way, street, highway, place, or alley to fear for his or her safety.

(b) UNLAWFUL ASSEMBLY. No person who is a member of a group of three or more persons who are loitering or prowling in a place, at a time or in a manner not usual for law abiding citizens, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity, in a public way, street, highway, place, or alley, shall refuse the lawful command of a police officer to more or provide to said policy officer a lawful reason for remaining in a public way, street, highway, place, or alley, whether said group is stationary or in transit, if the alleged loitering would create or cause to be created any of the following:

(1) Danger of a breach of the peace;
(2) The unreasonable danger of a disturbance to the comfort and repose of any person acting lawfully on or in a public way, street, highway, place, or alley reserved for pedestrians;
(3) The obstruction or attempted obstruction of the free normal flow of vehicular traffic or the normal passage of pedestrian traffic upon any public way, street, highway, place or alley;
(4) The obstruction, molestation or interference or attempt to obstruct, molest or interfere with any person lawfully on or in a public way, street, highway, place or alley, in a manner that would cause a reasonable person or pedestrian of a public way, street, highway, place, or alley to fear for his or her safety.

(c) No person shall be convicted under this section if the police officer failed to comply with the procedure outlined herein.

(d) No person shall be convicted under this section if it appears at trial that the explanation given by the person is true and, if believed by the police would;

(1) have dispelled the fear for human safety;
(2) have dispelled the concern for safety of property;
(3) have dispelled the fear of a breach of the peace;
(4) have provided a justifiable reason for obstructing vehicular or pedestrian traffic, subject to the discretion of the court.

(e) If a person takes flight upon appearance of a police officer who identifies himself as such, or refuses to identify himself, or attempts to conceal himself, said police officer has probable cause to believe a violation of this section has occurred and is hereby duly authorized to make an arrest.

(f) Any person, firm or corporation who violates the provisions of the section and is found guilty for said violation shall be fined not less than twenty-five dollars ($25.00) or more than five hundred dollars ($500.00) for each offense and a separate offense shall be deemed committed on each day during which a violation occurs or continues.

(g) The provisions of this section shall not apply to solicitation for any lawful business or any lawful charity licensed by the Charities Solicitation Commission of the City.

SECTION 2.

(a) The express or implied repeal or amendment by this ordinance does not affect any rights or liabilities accrued, penalties incurred, or proceedings begun prior to the effective date of this ordinance. Those rights, liabilities, and proceedings are continued, and penalties shall be imposed and enforced under the repealed or amended ordinance as if this ordinance had not been adopted.

(b) An offense committed before the effective date of this ordinance, under any ordinance expressly or impliedly repealed or amended by this ordinance, shall be prosecuted and remains punishable under the repealed or amended ordinance as if this ordinance had not been adopted.

(c) Should any provision (section, paragraph, sentence, clause, or any other portion) of this ordinance be declared by a court of competent jurisdiction to be invalid for any reason, the remaining provisions

can, without the invalid provision or provisions, be given the effect intended by the council in adopting this ordinance. To this end the provisions of this ordinance are severable.

(d) This ordinance shall be in effect from and after its passage by the council and compliance with IC 18–4–5–2.