687 N.E.2d 53 (1997)
177 Ill.2d 440
227 Ill.Dec. 130
The CITY OF CHICAGO, Appellant,
v.
Jesus MORALES et al., Appellees.
Nos. 80479, 80485 and 80668.
Supreme Court of Illinois.
October 17, 1997.
*57 Benna Ruth Solomon, Chief Assistant Corporation Counsel, Chicago, for City of Chicago in No. 80479.
Eileen T. Pahl, Assistant Public Defender, Chicago, for Jesus Morales, in No. 80479.
Fred L. Alvarez, Lord, Bissell & Brook, Chicago, for Northwest Neighborhood in No. 80479.
Peter D. Fischer, Asst. State's Attorney, Chicago, Richard A. Devine, State's Attorney Cook Co., Civil Appeals Div., Chicago, for County of Cook in No. 80479.
Steven J. Zick, Assistant Attorney General, Chicago, for the State in No. 80479.
Richard Samp, Washington Legal Foundation, Washington, for other party in No. 80479.
Chicago Corporation Counsel, Benna Ruth Solomon, Chief Assistant Corporation Counsel, Chicago, for City of Chicago in No. 80485.
Cook County Public Defender, Chicago, Eileen T. Pahl, Assistant Public Defender, Chicago, for Malcolm Ramsey in No. 80485.
Chicago Corporation Counsel, Chicago, Lawrence Rosenthal, Deputy Corporation Counsel, Chicago, for City of Chicago in No. 80668.
Harvey Grossman, Roger Baldwin Foundation of ACLU, Inc., Chicago, Cook County Public Defender, Chicago, Eileen T. Pahl, Assistant Public Defender, Chicago, for James Youkhana in No. 80668.
Justice NICKELS delivered the opinion of the court:
These consolidated appeals involve 70 defendants who were charged with violating the City of Chicago's Gang Congregation Ordinance (Chicago Municipal Code § 8-4-015 (added June 17, 1992)). In cause No. 80668, defendant Youkhana and 13 other defendants were charged with violating the ordinance. The Cook County circuit court granted defendants' motion to dismiss the city's actions against them, finding the ordinance unconstitutionally vague. The appellate court affirmed, holding the ordinance unconstitutional on several grounds. City of Chicago v. Youkhana, 277 Ill.App.3d 101, 213 Ill.Dec. 777, 660 N.E.2d 34.
In cause No. 80485, the Cook County circuit court dismissed the charges against defendant Ramsey and 49 other defendants, also finding the ordinance unconstitutional. In cause No. 80479, after separate bench trials in the Cook County circuit court, defendant Morales and five other defendants were found guilty of violating the ordinance and each sentenced to jail terms ranging from 1 to 27 days. The appellate court reversed the convictions of the Morales defendants based on its holding in Youkhana (Morales, Nos. 1-93-4039, 1-93-4351, 1-93-4356, 1-94-1542, 1-94-3065, 1-94-4062 cons. (unpublished order under Supreme Court Rule 23)), and affirmed the dismissal of the actions against the Ramsey defendants (Ramsey, Nos. 1-93-4125, 1-93-4126, 1-94-0220, 1-94-0876, 1-94-0877, 1-94-1541, 1-95-0191, 1-95-0246 cons. (unpublished order under Supreme Court Rule 23)). The appellate court granted the city's request for a certificate of importance in Youkhana (155 Ill.2d R. 316), and this court granted the city's petitions for leave to appeal in the other two causes (155 Ill.2d R. 315). We consolidated the three causes for purposes of this appeal.

BACKGROUND
In May 1992, the Chicago city council held hearings to explore the problems criminal street gangs present for the city's residents. Of particular concern was the problems gang members cause by loitering in public. Witnesses testified how gang members loiter as *58 part of a strategy to claim territory, recruit new members, and intimidate rival gangs and ordinary community residents. Testimony revealed that street gangs are responsible for a variety of criminal activity, including drive-by shootings, drug dealing, and vandalism.
As a result of the hearings, the city council enacted the Gang Congregation Ordinance, more commonly known as the "gang loitering ordinance." The city council incorporated its findings in the preamble to the ordinance, as follows:
"WHEREAS, The City of Chicago, like other cities across the nation, has been experiencing an increasing murder rate as well as an increase in violent and drug related crimes; and
WHEREAS, The City Council has determined that the continuing increase in criminal street gang activity in the City is largely responsible for this unacceptable situation; and
WHEREAS, In many neighborhoods throughout the City, the burgeoning presence of street gang members in public places has intimidated many law abiding citizens; and
WHEREAS, One of the methods by which criminal street gangs establish control over identifiable areas is by loitering in those areas and intimidating others from entering those areas; and
WHEREAS, Members of criminal street gangs avoid arrest by committing no offense punishable under existing laws when they know the police are present, while maintaining control over identifiable areas by continued loitering; and
WHEREAS, The City Council has determined that loitering in public places by criminal street gang members creates a justifiable fear for the safety of persons and property in the area because of the violence, drug-dealing and vandalism often associated with such activity; and
WHEREAS, The City also has an interest in discouraging all persons from loitering in public places with criminal gang members; and
WHEREAS, Aggressive action is necessary to preserve the city's streets and other public places so that the public may use such places without fear[.]" Chicago Municipal Code § 8-4-015 (added June 17, 1992).
The gang loitering ordinance provides in pertinent part:
"(a) Whenever a police officer observes a person whom he reasonably believes to be a criminal street gang member loitering in any public place with one or more other persons, he shall order all such persons to disperse and remove themselves from the area. Any person who does not promptly obey such an order is in violation of this section.
(b) It shall be an affirmative defense to an alleged violation of this section that no person who was observed loitering was in fact a member of a criminal street gang.
(c) As used in this section:
(1) `Loiter' means to remain in any one place with no apparent purpose.
(2) `Criminal street gang' means any ongoing organization, association in fact or group of three or more persons, whether formal or informal, having as one of its substantial activities the commission of one or more of the criminal acts enumerated in paragraph (3), and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity.
* * * * * *
(5) `Public place' means the public way and any other location open to the public, whether publicly or privately owned." Chicago Municipal Code § 8-4-015 (added June 17, 1992).
Each violation of the ordinance is punishable by a fine of up to $500, imprisonment for not more than six months, and the requirement to perform up to 120 hours of community service.
During the hearings, representatives of the Chicago law and police departments informed the city council that any limitations on the discretion police have in enforcing the ordinance would be best developed through police policy, rather than placing such limitations *59 into the ordinance itself. Accordingly, after the gang loitering ordinance was enacted, the Chicago police department issued a general order which provides guidelines for enforcement of the ordinance. Among other things, the general order sets forth standards for identifying criminal street gangs and specifies criteria for establishing probable cause that an individual is a member of a criminal street gang. Chicago Police Department, General Order No. 92-4 (eff. August 8, 1992).
Once enforcement of the gang loitering ordinance began, the trial courts of Cook County disagreed as to its validity. Upon review, the appellate court held the ordinance unconstitutional on several grounds. First, the appellate court found the ordinance unconstitutionally overbroad because it violates the first amendment rights of association, assembly, and expression. In addition, the appellate court found that the ordinance was unconstitutionally vague. Next, the appellate court determined the ordinance criminalizes a person's status in violation of the eighth amendment. Finally, the appellate court determined the ordinance allows arrests without probable cause, in violation of the fourth amendment. Youkhana, 277 Ill. App.3d 101, 213 Ill.Dec. 777, 660 N.E.2d 34.
The city urges that the judgment of the appellate court be reversed because the gang loitering ordinance: (1) sufficiently defines criminal conduct such that it is not unconstitutionally vague; (2) is not overbroad because it is a permissible restriction of first amendment rights; (3) does not create a status offense; and (4) requires the police to establish probable cause of illegal conduct before an offender can be arrested.
We find that the gang loitering ordinance violates due process of law in that it is impermissibly vague on its face and an arbitrary restriction on personal liberties. In doing so, we need not reach the issues that the ordinance creates a status offense, permits arrests without probable cause or is overbroad.

ANALYSIS
In construing a municipal ordinance, the same rules are applied as those which govern the construction of statutes. In re Application of the County Collector, 132 Ill.2d 64, 72,138 Ill.Dec. 138, 547 N.E.2d 107 (1989). Statutes are presumed constitutional and it is the court's duty to construe a legislative enactment so as to affirm its constitutionality and validity, if it is reasonably susceptible to such a construction. People v. Haywood, 118 Ill.2d 263, 271, 113 Ill.Dec. 236, 515 N.E.2d 45 (1987). The fundamental rule of statutory construction is to ascertain and give effect to the true intent and meaning of the lawmakers. Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc., 158 Ill.2d 76, 81, 196 Ill.Dec. 655, 630 N.E.2d 820 (1994). In doing so, the courts should look first to the statutory language, for the language of the statute is the best indication of the lawmaker's intent. Williams v. Illinois State Scholarship Comm'n, 139 Ill.2d 24, 51, 150 Ill.Dec. 578, 563 N.E.2d 465 (1990). Where the meaning of an enactment is clear and unambiguous, a court must give it effect as written, without reading into it limitations or conditions that the lawmakers did not express. Garza v. Navistar International Transportation Corp., 172 Ill.2d 373, 378, 217 Ill.Dec. 260, 666 N.E.2d 1198 (1996). Moreover, criminal statutes are to be strictly construed in favor of an accused and nothing should be taken by intendment or implication beyond the obvious or literal meaning of the statute. People v. Woodard, 175 Ill.2d 435, 444, 222 Ill.Dec. 401, 677 N.E.2d 935 (1997).

I. Vagueness
A cornerstone of our jurisprudence is that no person shall be deprived of life, liberty, or property without due process of law. U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, § 2. A well-established element of the guarantees of due process is the requirement that the proscriptions of a criminal statute be clearly defined. Haywood, 118 Ill.2d at 269, 113 Ill.Dec. 236, 515 N.E.2d 45, citing Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298-99, 33 L.Ed.2d 222, 227, (1972). To successfully challenge a criminal statute as being vague on its face, the statute must be impermissibly vague in all of its applications. Village of Hoffman Estates v. Flipside, Hoffman *60 Estates, Inc., 455 U.S. 489, 494-95, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362, 369 (1982); Haywood, 118 Ill.2d at 270, 113 Ill.Dec. 236, 515 N.E.2d 45. That is, the statute must be shown to be vague "in the sense that no standard of conduct is specified at all." Coates v. City of Cincinnati, 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214, 217 (1971). If on its face the challenged statute violates the due process clause, then the specific details of the individual offense would not serve to validate the statute. Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888, 890 (1939).
To satisfy the vagueness doctrine, a criminal statute must meet two basic criteria. First, a criminal statute must be sufficiently definite so that it gives persons of ordinary intelligence a reasonable opportunity to distinguish between lawful and unlawful conduct. Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903, 909 (1983); Grayned, 408 U.S. at 108, 92 S.Ct. at 2298-99, 33 L.Ed.2d at 227; People v. Bailey, 167 Ill.2d 210, 228, 212 Ill.Dec. 608, 657 N.E.2d 953 (1995). Second, a penal statute must adequately define the criminal offense in such a manner that does not encourage arbitrary and discriminatory enforcement. Kolender, 461 U.S. at 357-58, 103 S.Ct. at 1858, 75 L.Ed.2d at 909, Haywood, 118 Ill.2d at 269, 113 Ill.Dec. 236, 515 N.E.2d 45; see also Papachristou v. City of Jacksonville, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110, 115 (1972). We evaluate the provisions of the gang loitering ordinance in light of the due process criteria.

A. Adequate Notice

The first criterion of the void-for-vagueness doctrine requires a criminal statute to be sufficiently defined so it provides persons of ordinary intelligence adequate notice of proscribed conduct. Kolender, 461 U.S. at 357, 103 S.Ct. at 1858, 75 L.Ed.2d at 909; Grayned, 408 U.S. at 108, 92 S.Ct. at 2298-99, 33 L.Ed.2d at 227; Bailey, 167 Ill.2d at 228, 212 Ill.Dec. 608, 657 N.E.2d 953. Due process guarantees this adequate notice of proscribed conduct so that ordinary persons are not required to guess at a law's meaning but, rather, can know what conduct is forbidden and act accordingly. Flipside, Hoffman Estates, Inc., 455 U.S. at 498, 102 S.Ct. at 1193, 71 L.Ed.2d at 371; Connolly v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926). "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." Lanzetta, 306 U.S. at 453, 83 L.Ed. at 890. 59 S.Ct. at 619, 83 L.Ed. at 890.
Loitering and vagrancy statutes have been utilized throughout American history in an attempt to prevent crime by removing "undesirable persons" from public before they have the opportunity to engage in criminal activity. See Papachristou, 405 U.S. at 161-63, 92 S.Ct. at 842-44, 31 L.Ed.2d at 114-16; see generally Model Penal Code § 250.6, Commentary (1980); Comment, Is There Something Suspicious About the Constitutionality of Loitering Laws?, 50 Ohio St. L.J. 717 (1989). Nevertheless, it is well settled that broadly worded criminal loitering laws which prohibit loitering without additional unlawful conduct are doubtlessly unconstitutional. See, e.g., Shuttlesworth v. City of Birmingham, 382 U.S. 87, 90, 86 S.Ct. 211, 213, 15 L.Ed.2d 176, 179 (1965).
The gang loitering ordinance provides that "[w]henever a police officer observes a person whom he reasonably believes to be a criminal street gang member loitering in any public place with one or more other persons, he shall order all such persons to disperse and remove themselves from the area. Any person who does not promptly obey such an order is in violation of this section." Chicago Municipal Code § 8-4-015 (added June 17, 1992). The city argues that the terms of the ordinance are sufficiently definite so that ordinary persons can comprehend the prohibited conduct. We disagree.
The ordinance seeks to criminalize acts of "loitering" in a public place. Webster's defines "loiter" to mean "to remain in or near a place in an idle or apparently idle manner" and to "hang around aimlessly." Webster's Third New International Dictionary 1331 (1981). The infirmity with this type of prohibition *61 is that it fails to distinguish between innocent conduct and conduct calculated to cause harm and "makes criminal activities which by modern standards are normally innocent" (Papachristou, 405 U.S. at 163, 31 L.Ed.2d at 116, 92 S.Ct. at 844). Although persons of ordinary intelligence may maintain a common and accepted meaning of the word "loiter," such term by itself is inadequate to inform a citizen of its criminal implications. See Territory of Hawaii v. Anduha, 48 F.2d 171, 172-73 (9th Cir.1931); Arizona ex rel. Williams v. City Court, 21 Ariz.App. 489, 491, 520 P.2d 1166, 1168 (1974); State v. Hudson, 111 N.H. 25, 26, 274 A.2d 878, 879 (1971); People v. Diaz, 4 N.Y.2d 469, 471, 151 N.E.2d 871, 872, 176 N.Y.S.2d 313, 315 (1958).
The city cites Wiemerslage v. Maine Township High School District 207, 29 F.3d 1149 (7th Cir.1994), for the proposition that the term "loiter" is not unconstitutionally vague. The Wiemerslage holding is not applicable to the instant case. At issue in Wiemerslage was the validity of a high school disciplinary rule prohibiting loitering in a specific area of campus. The federal court of appeals, in finding that the prohibitions of the disciplinary rule were not vague, expressly observed that criminal loitering laws are subject to a more stringent standard of specificity. Wiemerslage, 29 F.3d at 1152.
Moreover, the definition of "loiter" provided by the ordinance does not assist in clearly articulating the proscriptions of the ordinance. The ordinance defines "loiter" to mean "to remain in any one place with no apparent purpose." Chicago Municipal Code § 8-4-015(c)(1) (added June 17, 1992). People with entirely legitimate and lawful purposes will not always be able to make their purposes apparent to an observing police officer. For example, a person waiting to hail a taxi, resting on a corner during a jog, or stepping into a doorway to evade a rain shower has a perfectly legitimate purpose in all these scenarios; however, that purpose will rarely be apparent to an observer.
Courts in several other jurisdictions have found similarly worded prohibitions of criminal loitering statutes unconstitutionally vague. See, e.g., United States ex rel. Newsome v. Malcolm, 492 F.2d 1166 (2d Cir.1974) (loitering without apparent reason), aff'd sub nom. Lefkowitz v. Newsome, 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975); Powell v. Stone, 507 F.2d 93, 95 (9th Cir.1974) (loitering without apparent reason), rev'd on other grounds, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); Ricks v. District of Columbia, 414 F.2d 1097, 1107 (D.C.Cir.1968) (loitering without visible business); Kirkwood v. Loeb, 323 F.Supp. 611, 614-15 (W.D.Tenn.1971) (loitering without any legitimate purpose); In re C.M., 630 P.2d 593, 596 (Colo.1981) (loitering without legitimate reason); People v. Berck, 32 N.Y.2d 567, 300 N.E.2d 411, 347 N.Y.S.2d 33 (1973) (loitering without apparent reason).
In addition, the city cites several cases for the proposition that an ordinance prohibiting loitering alone is sufficiently defined to pass the void-for-vagueness test. However, in all of the cases cited by the city, the courts upheld ordinances which criminalized loitering combined with some other overt act or criminal intent. See, e.g., Williams, 21 Ariz. App. at 491, 520 P.2d at 1168 (loitering for purpose of begging); People v. Superior Court, 46 Cal.3d 381, 758 P.2d 1046, 250 Cal. Rptr. 515 (1988) (loitering to solicit lewd or unlawful act); State v. Ecker, 311 So.2d 104 (Fla.1975) (loitering in an unusual manner under circumstances which warrant alarm); Bell v. State, 252 Ga. 267, 313 S.E.2d 678 (1984) (same); State v. Armstrong, 282 Minn. 39, 162 N.W.2d 357 (1968) (loitering with intent to solicit prostitution). Moreover, several of the cases cited by the city expressly recognize that a law which criminalizes "loitering" alone would be unconstitutionally vague. See, e.g., Williams, 21 Ariz.App. at 491, 520 P.2d at 1168; Ecker, 311 So.2d at 107; Camarco v. City of Orange, 116 N.J.Super. 531, 534, 283 A.2d 122, 126 (1971). The city's argument is without merit.
These cases demonstrate that when the term "loitering" is joined with a second specific element to form the prohibited conduct defined by a criminal loitering statute, courts have uniformly found that the law sufficiently informs persons as to the forbidden conduct and, thus, is not vague. The city contends, in the alternative, that the gang loitering ordinance's *62 prohibited conduct is made up of specific elements in addition to mere loitering.

1. Loitering With a Criminal Street Gang Member
First, the city argues that the ordinance prohibits loitering with the additional element of being with a member of a criminal street gang. Initially, we must observe that, literally read, the gang loitering ordinance does not prohibit loitering with a criminal street gang member. Rather, the ordinance requires only that the arresting officer have a reasonable belief that one person in a group of loiterers is a gang member.
However, a reasonable belief, or probable cause, is insufficient to support a criminal conviction. See People v. Nash, 173 Ill.2d 423, 431, 220 Ill.Dec. 154, 672 N.E.2d 1166 (1996). In addition, this added element is itself vague, as it conveys no precise warning of the proscribed conduct understandable by an ordinary person. An individual standing on a street corner with a group of people has no way of knowing whether an approaching police officer has a reasonable belief that the group contains a member of a criminal street gang. That condition depends solely on the police officer's subjective evaluation of the facts of the situation in light of his own experience. See Kolender, 461 U.S. at 368-69, 103 S.Ct. at 1864, 75 L.Ed.2d at 916 (Brennan, J., concurring).
If the city intended to require actual knowledge on a defendant's part of another loiterer's gang membership, then that knowledge must be established as a fact in order to support a conviction. See Lanzetta, 306 U.S. at 458, 59 S.Ct. at 621, 83 L.Ed. at 893; accord People ex rel. Gallo v. Acuna, 14 Cal. 4th 1090, 929 P.2d 596, 60 Cal.Rptr.2d 277 (1997) (imposing requirement of actual knowledge on part of defendant of other party's gang membership status in order for injunction to pass scrutiny under the vagueness doctrine). Although the ordinance provides an affirmative defense which allows the defendant to show that no one in the group was actually a gang member, this affirmative defense does not cure the defect. Showing that one person in a group of loiterers is a gang member does not ultimately prove that a defendant had knowledge of that fact. Furthermore, even adding a knowing association with a gang member to the act of loitering is still insufficient because the city cannot "forbid, on pain of criminal punishment, assembly with others merely to advocate activity, even if that activity is criminal in nature" (People v. Nash, 173 Ill.2d 423, 431-32, 220 Ill.Dec. 154, 672 N.E.2d 1166 (1996), citing Brandenburg v. Ohio, 395 U.S. 444, 448-49, 89 S.Ct. 1827, 1830, 23 L.Ed.2d 430, 434-35 (1969)).

2. Failure to Obey a Dispersal Order
The city contends that another specific element of the offense of gang loitering is the failure to obey a police order to disperse. This is also insufficient to cure the vagueness of the ordinance. In Shuttlesworth, the Supreme Court reviewed a conviction pursuant to an ordinance which made it " `unlawful for any person to stand or loiter upon any street or sidewalk ... after having been requested by any police officer to move on.'" Shuttlesworth, 382 U.S. at 90-92, 86 S.Ct. at 213-14, 15 L.Ed.2d at 179-80. The Court determined that, as written, the ordinance was unconstitutionally vague because it allowed a person to "stand on a public sidewalk * * * only at the whim of any police officer." Shuttlesworth, 382 U.S. at 90-92, 86 S.Ct. at 213-14,15 L.Ed.2d at 179-80.
The proscriptions of the gang loitering ordinance are essentially the same as the Shuttlesworth ordinance. Merely adding the element of refusing to obey an order by police to disperse does not elevate the gang loitering ordinance to such a level that it provides adequate notice of proscribed conduct. See State v. Hudson, 111 N.H. at 26, 274 A.2d at 879 (merely loitering cannot be made criminal, even if statute requires refusal of police's order to disperse); Kirkwood, 323 F.Supp. at 616 (violation of loitering ordinance conditioned upon failure to move when directed to do so by police officer includes unconstitutionally vague standards). Moreover, this determination is consistent with our prior holdings. See, e.g., City of Chicago v. Meyer, 44 Ill.2d 1, 5, 253 N.E.2d 400 (1969) (police may arrest persons for failing to obey an *63 order to cease otherwise lawful conduct, but only after the police have made all reasonable efforts to maintain order and the conduct produces an imminent threat of uncontrollable violence or riot).
Furthermore, if the underlying statute is itself impermissibly vague, as the gang loitering ordinance here, then a conviction based upon failure to obey the order of a police officer pursuant to that statute cannot stand. See Shuttlesworth, 382 U.S. at 90-92, 86 S.Ct. at 213-14, 15 L.Ed.2d at 179-80. The city correctly observes that it is free to prevent people from obstructing traffic and blocking the public way. However, it must do so "through the enactment and enforcement of ordinances directed with reasonable specificity toward the conduct to be prohibited." Coates, 402 U.S. at 614, 91 S.Ct. at 1688, 29 L.Ed.2d at 217, citing Gregory v. City of Chicago, 394 U.S. Ill, 118, 124-25, 89 S.Ct. 946, 950, 953-54, 22 L.Ed.2d 134-40, 139, 143 (1969) (Black, J., concurring, joined by Douglas, J.).
For these reasons, we find that the gang loitering ordinance fails to meet the adequate notice standards of the vagueness doctrine.

B. Arbitrary Enforcement

The second and more important aspect of the vagueness doctrine is the requirement that a penal statute must adequately define a criminal offense in such a manner that does not encourage arbitrary and discriminatory enforcement. Kolender, 461 U.S. at 357-58, 103 S.Ct. at 1858, 75 L.Ed.2d at 909; Haywood, 118 Ill.2d at 269, 113 Ill.Dec. 236, 515 N.E.2d 45; see also Papachristou, 405 U.S. at 162, 92 S.Ct. at 843, 31 L.Ed.2d at 115. Where lawmakers fail to provide minimal guidelines to govern law enforcement, a criminal law "may permit `a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.'" Kolender, 461 U.S. at 358, 103 S.Ct. at 1858, 75 L.Ed.2d at 909, quoting Smith v. Goguen, 415 U.S. 566, 575, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605, 613 (1974). Moreover, when a law fails to provide standards regulating the exercise of its discretion, "the scheme permits and encourages an arbitrary and discriminatory enforcement of the law. [The law] furnishes a convenient tool for `harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure.'" Papachristou, 405 U.S. at 170, 92 S.Ct. at 847, 31 L.Ed.2d at 120, quoting Thornhill v. Alabama, 310 U.S. 88, 97-98, 60 S.Ct. 736, 742, 84 L.Ed. 1093, 1100 (1940).
The gang loitering ordinance fails to meet these standards. The ordinance provides such ambiguous definitions of its elements that it does not discourage arbitrary or discriminatory enforcement. The definition of loitering as "to remain in any one place with no apparent purpose" provides absolute discretion to police officers to decide what activities constitute loitering. Moreover, police are given complete discretion to determine whether any members of a group are gang members. These guidelines do not conform with accepted standards for defining a criminal offense.
Where a criminal ordinance vests unfettered discretion in the police to determine whether a suspect's conduct has violated the ordinance, it "entrust[s] lawmaking `to the moment-to-moment judgment of the policeman on his beat'" (Smith, 415 U.S. at 575, 94 S.Ct. at 1248, 39 L.Ed.2d at 613, quoting Gregory v. City of Chicago, 394 U.S. Ill, 120, 89 S.Ct. 946, 951, 22 L.Ed.2d 134, 141 (1969) (Black, J., concurring, joined by Douglas, J.)), and "confers on police a virtually unrestrained power to arrest and charge persons with a violation" (Lewis v. City of New Orleans, 415 U.S. 130, 135, 94 S.Ct. 970, 973, 39 L.Ed.2d 214, 220 (1974) (Powell, J., concurring)).
The city does not dispute that the ordinance grants the police department a vast amount of discretion in its enforcement. In fact, the city itself points out that the Chicago police department urged the city council to exclude from the ordinance any limitations on the discretion the police hold in enforcing the ordinance. Notwithstanding that fact, the city contends that the general order of the police department should be considered a limiting construction of the ordinance, thus curing its vagueness. However, the general police order does not save the ordinance from being impermissibly vague.
*64 We observe that lawmakers may not abdicate their responsibilities for setting the standards of the criminal law. Smith, 415 U.S. at 575, 94 S.Ct. at 1248, 39 L.Ed.2d at 613. It is the duty of the lawmakers to establish minimal guidelines to govern law enforcement. Kolender, 461 U.S. at 358, 103 S.Ct. at 1858, 75 L.Ed.2d at 909. Moreover, although the general police order goes to great lengths to define criminal street gangs, it does absolutely nothing to cure the imprecisions of the definition of the "loitering" element of the crime. In addition, a thorough examination of the record reveals that police officers have not followed the guidelines of the general order in a uniform manner.[1]
Furthermore, the gang loitering ordinance is not reasonably susceptible to a limiting construction which would affirm its validity. Although the proscriptions of the ordinance are vague, the city council's intent in its enactment is clear and unambiguous. The city has declared gang members a public menace and determined that gang members are too adept at avoiding arrest for all the other crimes they commit. Accordingly, the city council crafted an exceptionally broad ordinance which could be used to sweep these intolerable and objectionable gang members from the city streets. As the Supreme Court has observed, ordinances such as the gang loitering ordinance are drafted in an intentionally vague manner so that persons who are undesirable in the eyes of police and prosecutors can be convicted even though they are not chargeable with any other particular offense. Papachristou, 405 U.S. at 166, 92 S.Ct. at 845, 31 L.Ed.2d at 118. Laws such as these tend "to be invoked only where there is no other valid basis for arresting an objectionable or suspicious person. The opportunity for abuse * * * is self-evident." Lewis, 415 U.S. at 136, 94 S.Ct. at 974, 39 L.Ed.2d at 221 (Powell, J., concurring).
We empathize with the city council's objectives in enacting the gang loitering ordinance. Criminal street gangs are an expanding cancer in our society and their illegal activities endanger the safety of many law-abiding citizens. Nevertheless, as important as it is to abate this problem, the city cannot fight gang crime through the, enactment and enforcement; of an ordinance that fails to meet constitutional standards for definiteness and clarity. Kolender, 461 U.S. at 361, 103 S.Ct. at 1860, 75 L.Ed.2d at 911, citing Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888, 890 (1939).

II. Substantive Due Process
Defendants also contend that the gang loitering ordinance is an arbitrary exercise of the city's police power and, thus, violates substantive due process. The city responds that defendants have no constitutional right to loiter. We agree with defendants.
The city is incorrect in its contention that the gang loitering ordinance intrudes upon no constitutionally protected activity. In Papachristou, the Supreme Court reviewed a statute which prohibited, among other things, the acts of loafing, loitering, and nightwalking. The Court observed that, although not expressly mentioned in the Constitution, such activities are amenities of American life. Papachristou, 405 U.S. at 164, 92 S.Ct. at 844, 31 L.Ed.2d at 117. The freedom to engage in such harmless activities is an aspect of the personal liberties protected by the due process clause. See City of Chicago v. Wilson, 75 Ill.2d 525, 529-30, 27 Ill.Dec. 458, 389 N.E.2d 522 (1978), citing Kelley v. Johnson, 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976); see also Swank v. Smart, 898 F.2d 1247, 1251-52 (7th Cir. 1990).
*65 Among those protected personal liberties which have long been recognized are the general right to travel (see, e.g., Shapiro v. Thompson, 394 U.S. 618, 629, 89 S.Ct. 1322, 1329, 22 L.Ed.2d 600, 612 (1969) (constitutional concepts of personal liberty require that all citizens be free to travel throughout the land uninhibited by laws which unreasonably burden or restrict this movement), overruled in part on other grounds, Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)), the right of locomotion (see, e.g., Anduha, 48 F.2d at 172, quoting Pinkerton v. Verberg, 78 Mich. 573, 584, 44 N.W. 579, 582 (1889)) (the right to go where and when one pleases), the right to freedom of movement (Kolender, 461 U.S. at 358, 103 S.Ct. at 1859, 75 L.Ed.2d at 910), and the general right to associate with others (Swank, 898 F.2d at 1252). The gang loitering ordinance impinges upon all of these personal liberty interests.
We recognize that such personal liberties are not absolute. Only governmental actions which intrude upon personal liberties arbitrarily or in an utterly unreasonable manner violate the due process clause. See Illinois Gamefowl Breeders Ass'n v. Block, 75 Ill.2d 443, 453, 27 Ill.Dec. 465, 389 N.E.2d 529 (1979). Nevertheless, we find that the gang loitering ordinance unreasonably infringes upon personal liberty. Persons suspected of being in criminal street gangs are deprived of the personal liberty of being able to freely walk the streets and associate with friends, regardless of whether they are actually gang members or have committed any crime. As one trial judge warned one of defendants below, "[the police] will lock you up just for being who you are." Such laws, arbitrarily aimed at persons based merely on the suspicion that they may commit some future crime, are arbitrary and likely to be enforced in a discriminatory manner. See Papachristou, 405 U.S. at 166, 92 S.Ct. at 845, 31 L.Ed.2d at 118.
The city is not helpless in its war against the criminal activity of gangs. Many of the offensive activities the city claims the gang loitering ordinance will deter are already criminal acts. See, e.g., 720 ILCS 5/12-6 (West 1996) (intimidation); 720 ILCS 5/12-6.1 (West 1996) (compelling organization membership of persons); 720 ILCS 5/12-6.2 (West 1996) (aggravated intimidation-a gang member committing the offense of intimidation for the purpose of furthering gang activities); 720 ILCS 5/25-1 (West 1996) (mob action). However, the city cannot empower the police to sweep undesirable persons from the public streets through vague and arbitrary criminal ordinances.
We hold that the gang loitering ordinance is an arbitrary restriction on personal liberty and, thus, violates substantive due process. Therefore, we need not determine whether the gang loitering ordinance impermissibly infringes on either the first amendment right of expressive association or the fundamental right of intimate association, both of which command a much higher level of scrutiny. See, e.g., Roberts v. United States Jaycees, 468 U.S. 609, 623, 104 S.Ct. 3244, 3252-53, 82 L.Ed.2d 462, 474-75 (1984).
For the foregoing reasons, the judgments of the appellate court are affirmed.
Appellate court judgments affirmed.
NOTES
[1] In one example, the general order provides that probable cause of a defendant's membership in a criminal street gang can be substantiated by his wearing distinctive colors indicative of a specific criminal street gang. However, the general order expressly states that gang "membership may not be established solely because an individual is wearing clothing available for sale to the general public." Chicago Police Department, General Order No. 92-4, par. V (eff. August 8, 1992). Despite this express limitation, defendant Morales was arrested and convicted of violating the gang loitering ordinance even though the arresting officer testified that his only basis for determining that Morales was a gang member was that Morales wore black and blue clothing, which are the colors of the Gangster Disciples criminal street gang.